## 70863. BRAY et al. v. DIXON.
(338 SE2d 872)

BEASLEY, Judge.

The plaintiffs, Mr. and Mrs. Bray, brought an action for medical malpractice against Dr. Dixon. The complaint, filed on April 3, 1984 alleged that Dr. Dixon negligently performed surgery on Mrs. Bray on May 2, 1980. The complaint also alleged that a confidential relationship existed between Dr. Dixon and Mrs. Bray, his patient; that despite it Dr. Dixon fraudulently failed to disclose to Mrs. Bray that he did not render proper care and treatment; that Mrs. Bray was deterred from bringing an action because of the fraud until she discovered it in September 1982.

After responding, Dr. Dixon moved for summary judgment asserting the statute of limitation (OCGA § 9-3-71) and relied upon depositions by Mrs. Bray and himself and upon the answers of plaintiffs to defendant's interrogatories. The trial court granted defendant's motion in a fully explained order and the Brays appealed to this court.

The instant action was barred unless the limitation was tolled by the fraudulent conduct of the treating physician.

OCGA § 9-3-96 stops the limitation if defendant is guilty of fraud by which plaintiff is debarred or deterred from bringing an action. Generally, only actual fraud tolls the statute. *Shipman v. Horizon Corp.*, 245 Ga. 808 (267 SE2d 244) (1980); *Scott v. DeKalb County Hosp. Auth.*, 169 Ga. App. 257, 258 (312 SE2d 154) (1983). This case fits the "second circumstances" described in *Shipman* in that the gravamen of the action is other than actual fraud. In this type of case " 'mere silence' is not sufficient to toll the statute unless there is a duty to make a disclosure because of a relationship of trust and confidence between the parties . . . [T]he statute is tolled only until the fraud is discovered or should have been discovered, unless excused." *Shipman*, 245 Ga. 808, 809, supra.

"In cases involving a relation of trust and confidence, such as a physician and patient, silence on the part of the physician when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation." *Leagan v. Levine*, 158 Ga. App. 293 (1) (279 SE2d 741) (1981).

The five essential elements of fraud have been reiterated many times. See, e.g., *Eckerd's Columbia v. Moore*, 155 Ga. App. 4, 5 (1) (270 SE2d 249) (1980).

Among the requirements are that the representation be false and defendant know that at the time it was made. *Montgomery v. Ritchey*, 151 Ga. App. 66, 67 (258 SE2d 733) (1979); *Reilly v. Mosley*, 165 Ga. App. 479, 480 (301 SE2d 649) (1983); *Hart v. Waldo*, 117 Ga. 590 (1) (43 SE 998) (1903). Hence, the initial focus of our inquiry must be addressed to whether the proof showed the defendant doctor made representations which were not true.

Mrs. Bray had been suffering from acute headaches and earaches for a year or so and had been advised to see a specialist in Minnesota for surgery. X-ray examination had revealed she had a torn disc or "meniscus" in her jaw. Having learned that Dr. Dixon could perform appropriate surgery, Mrs. Bray consulted with him. Dr. Dixon agreed to perform an operation known as TMJ meniscectomy which involved removal of the meniscus from the temporomandibular joint. The surgery was performed but Mrs. Bray continued to have problems and subsequently had two more operations. It is now contended that since the meniscus acts as a type of cushion for the jawbone it should have been replaced by some prosthetic device which would have carried out the prior function of the meniscus. Mrs. Bray states she developed arthritis and a "popping" in her jaw after the operation and that the further surgery was necessitated by the failure to replace the meniscus.

In his deposition Dr. Dixon testified he had performed that operation several times before; that he consulted with the specialist in Minnesota whom Mrs. Bray would have used; that it was not neces-

sary to replace the meniscus; that at the time of the operation and thereafter while Mrs. Bray was his patient (she saw him for the last time on May 4, 1981) there was no authority for the proposition that the prosthesis to replace the meniscus was desirable. He admitted there is medical authority now which advocates replacement by graft but stated he saw no sign of arthritic condition when he performed the surgery; that there is a built-in cushion in the condyle and the glenoid fossa even without the meniscus, so no additional cushion is normally needed. He also stated that during her post operative care Mrs. Bray had some headaches unrelated to her jaw and that she progressed normally.

Mrs. Bray testified that after the operation her condition did not improve, she continued to have headaches and developed an arthritic condition in her jaw. She stated she saw another doctor in April 1981 and went to Dr. Dixon for the last time in May 1981 to have a tube implanted by another doctor removed from her ear. She related that two other doctors performed subsequent operations to correct her problem and also related what the doctors told her. There was no proof from any medical source in her behalf either by deposition, affidavit or otherwise.

" 'A doctor is not an insurer and an unintended result does not raise even an inference of negligence. "A physician can not always effect a cure." ' " *Blount v. Moore,* 159 Ga. App. 80, 81 (1) (282 SE2d 720) (1981). " 'The fact that treatment has resulted unfavorably does not raise even a presumption of want of proper care, skill or diligence.' " *Hayes v. Brown,* 108 Ga. App. 360 (1) (133 SE2d 102) (1963); *Hyles v. Cockrill,* 169 Ga. App. 132, 134 (3) (312 SE2d 124) (1983). Here the doctor's testimony set forth that he exercised the requisite skill and that he performed the operation in accordance with standards applicable at that time. It was then incumbent on plaintiffs to establish that this was not true for otherwise there would be no duty on the doctor's part to make any revelation to the plaintiffs.

Once the defendant established a prima facie case in his favor, the plaintiffs must present the essence of their case or else suffer an adverse judgment. *Meade v. Heimanson,* 239 Ga. 177, 180 (236 SE2d 357) (1977). As pointed out above, the plaintiffs are not the beneficiaries of a presumption arising from the failure to cure. Instead, they must come forward with evidence of negligence and a known failure to reveal such in order to show fraud.

As this court observed in *Johnson v. Gamwell,* 165 Ga. App. 425, 426-427 (301 SE2d 492) (1983), while misdiagnosis may raise the issue of negligence it is insufficient to establish fraud which will toll the statute. In this regard, it should be noted that the proof proffered must be evidence which is admissible on the trial of the case. *Wheat v. Montgomery,* 130 Ga. App. 202, 204 (5) (202 SE2d 664) (1973);

*Doyal & Assoc. v. Blair*, 138 Ga. App. 314, 316 (226 SE2d 109) (1976). The testimony regarding what Mrs. Bray was told by her succession of doctors was pure hearsay and without probative value. As such it did not carry plaintiff's burden of showing that was a genuine issue of material fact. *Thomasson v. Trust Co. Bank*, 149 Ga. App. 556, 559 (254 SE2d 881) (1979). Thus, there is no evidence to dispute the fact that Dr. Dixon's statements were true when made. *Crawford v. McDonald*, 125 Ga. App. 289, 291 (187 SE2d 542) (1972); *Montgomery v. Ritchey*, 151 Ga. App. at 67, supra; *Shved v. Daly*, 174 Ga. App. 209, 210 (329 SE2d 536) (1985).

Moreover, there is nothing to show any conduct which would have precluded plaintiffs from learning Mrs. Bray's situation after May 1981. The fraud complained of is that Dr. Dixon never disclosed to Mrs. Bray that he was not going to replace the meniscus. She learned this fact of no replacement in the spring of 1981 when she was under the treatment of Dr. Meyer. From that time on she was in the care of other doctors, had further surgery, and demonstrates no excuse or anything else to prevent her learning fully what is now claimed as Dr. Dixon's negligence. *Forgay v. Tucker*, 128 Ga. App. 497, 500-501 (197 SE2d 492) (1973); *Shved v. Daly*, 174 Ga. App. at 211, supra. Plaintiffs point to conversations in September or October 1982 with another doctor's employee and Dr. Dixon's former employee as the first time of discovery, but the record undisputedly shows otherwise. Thus, plaintiffs had until April or May of 1983 to bring suit, and its filing in April 1984 was too late.

It was not error to grant defendant's motion for summary judgment grounded on the expiration of the statute of limitation.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 4, 1985 —
REHEARING DENIED NOVEMBER 20, 1985.

*William H. Major III*, for appellants.
*C. Wade Monk II*, for appellee.