76531. ROWELL v. McCUE.
(373 SE2d 243)

BIRDSONG, Chief Judge.

This is an appeal from the order of the superior court granting appellee/defendant's motion for summary judgment.

Appellant initiated a suit for medical malpractice against appellee (Dr. McCue). In February 1983, appellee performed a carpal tunnel release operation on appellant's right hand. Appellant noticed that following the operation she initially had more movement in her fingers, but the pain remained in equal or greater intensity than before the operation. Dr. McCue advised the appellant that the pain she was experiencing was normal, but the pain persisted. Appellant continued to have problems with her hands but, according to Dr. McCue, she did not exhibit symptoms normally associated with carpal tunnel syndrome. In an effort to determine what was wrong with her hands, Dr. McCue sent appellant to two other physicians, as he could not make a diagnosis of her problem at that time. Appellant asserts that she was unhappy with Dr. McCue and was looking for another doctor. After her surgery, appellant knew "definitely something was

wrong." Appellant remained in pain for a period of "some two years continuously." Dr. McCue last saw the appellant on October 10, 1983; thereafter, she was seen by Drs. Brogdon, Gupta and Smithson. Finally, appellant was seen by Dr. Ramaden.

After attempting less severe treatment, Dr. Ramaden operated on appellant's left hand in January 1985. Following that operation, appellant claims that Dr. Ramaden informed her that the alleged prior carpal tunnel release on her left hand had not been performed and that he suspected that the problem with her right hand was the same. Appellant was thus aware of this possibility in January 1985. Appellant's right hand was operated on in June 1986. According to appellant, Dr. Ramaden told her following this operation that no carpal tunnel release had been accomplished on her right hand either. In addition to this hearsay evidence and appellant's own lay conclusions that Dr. McCue had not performed the two operations, appellant offered the deposition testimony of Dr. Ramaden. Dr. Ramaden testified that appellant's surgery on January 15, 1985, was performed by Dr. Ian Rogers with Dr. Ramaden's assistance, and that the operative report reflects that appellant's transverse carpaling was completely intact. The appellant's hospital discharge summary reflects that it did not appear to Dr. Ramaden "the patient had complete release of the carpal tunnel before because her carpal ligament was intact, and, also, there was not evidence of any scar tissue around the nerve as usually happens after release of the carpal tunnel." Appellee Dr. McCue in his affidavit expressly states that in both operations he carefully cut, under direct vision, the entire transverse carpal ligaments, and "[t]he transverse carpal ligaments were both cut through and through as a part of the surgeries on the two hands." Further, Dr. McCue states that he has performed follow-up surgeries on patients who have undergone previous carpal tunnel releases and found scarring to be so minimal in some patients as to "give the appearance that no surgery had ever been performed." Dr. McCue also refers to excerpts from an "authoritative and widely used" text on operative orthopedics in support of his observations, and attaches an excerpt from that text to his affidavit.

The trial court granted appellee's motion for summary judgment and concluded that there is no evidence that appellee failed to exercise the requisite standards of care at any time during his care and treatment of the appellant, that the statute of limitations had run on this action as it was not filed within two years of the date on which the negligent or wrongful act or omission occurred, and that insufficient evidence existed to raise a question of fact as to fraud which would toll the statute of limitations. *Held*:

Appellant enumerates as her fourth enumerated error that the trial court erred in granting appellee's motion for summary judgment

on the basis that the statute of limitations had run for failure to file within the two-year statutory period, when the actions of defendant had deterred appellant from filing her action within the two-year statutory time. See generally OCGA §§ 9-3-71 (as enacted by Ga. L. 1976, p. 1363, § 1); 9-3-71 (as enacted by Ga. L. 1985, p. 556, § 1); 9-3-96. We will address this enumerated error first, as its resolution may be dispositive of the matter before us.

In resolving this issue, appellant as opposing party shall be given every benefit of all reasonable doubt, and the court shall construe the evidence and all inferences and conclusions arising therefrom most favorably toward the appellant. See *Bridges v. Interstate Truck Leasing*, 171 Ga. App. 361 (319 SE2d 531).

OCGA § 9-3-71, the applicable statute of limitations, requires that an action for an injury caused by medical malpractice be brought within two years after the date on which the negligent or wrongful act or omission occurred. OCGA § 9-3-96 pertinently provides that if "the defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." "In order to toll the statute of limitation it [is] necessary for [appellant] to present evidence raising an issue of fraud or misrepresentation on the part of Dr. [McCue]." *Hamilton v. Mitchell*, 165 Ga. App. 717, 718 (302 SE2d 589). "In this regard, it should be noted that the proof proffered must be evidence which is admissible on the trial of the case." *Bray v. Dixon*, 176 Ga. App. 895, 897 (338 SE2d 872). The testimony regarding what appellant was subsequently told by Dr. Ramaden "was pure hearsay and without probative value," and as such "it did not carry [appellant's] burden of showing that [there] was a genuine issue of material fact" as to fraud. Id. at 898.

"The physician-patient relationship is a confidential one and silence or failure to disclose what should be said or disclosed can amount to fraud which tolls the statute." *Lynch v. Waters*, 256 Ga. 389, 390 (349 SE2d 456). Thus, the doctor-patient relationship creates a duty to inform the patient of his or her condition. *Hendrix v. Schrecengost*, 183 Ga. App. 201, 202 (358 SE2d 486). A " '[f]ailure to fulfill this duty would constitute fraud, which would operate to toll the statute of (limitation).' " Id. A fraud count, however, must be based on more than evidence of a misdiagnosis to withstand a motion for judgment on the pleadings. *Lynch*, supra at 390. Rather, the "patient must present evidence of a *known* failure to reveal negligence in order to show fraud." (Emphasis supplied.) *Hendrix*, supra at 202; *Bray*, supra at 897.

In this case, the most favorable inference which can be drawn from the testimony of Dr. Ramaden is that the appellee *failed to sever the entire carpal ligaments on both the right and left hand of*

appellant. This testimony is circumstantial in nature, and is refuted by the direct testimony of the appellee that he cut through both transverse carpal ligaments. We have consistently held that " ' " [i]n passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." ' " *Dozier v. Wallace*, 169 Ga. App. 126, 130 (311 SE2d 839). It thus appears that in view of the "uncontradicted and unimpeached evidence produced by [appellee] in support of [his] motion for . . . summary judgment, the record demonstrates no genuine issue of material fact" as to appellee's negligence. Id.

Assuming arguendo that appellant in fact failed to cut both of the transverse carpal ligaments in appellant's hands, there exists no evidence " 'from which we can make any inference that (the defendant doctor) had any knowledge of improper conduct on his part or that he tried to cover up such conduct in any way.' " *Hendrix*, supra at 202. In fact, while appellee did advise plaintiff that the pain she was experiencing was normal, he did not attempt to prevent her from obtaining an accurate diagnosis of her condition. In fact, it is undisputed that appellee referred appellant to two other doctors, and that the appellant also sought other medical advice as she was unhappy with appellee and knew "definitely something was wrong." The facts of this case are distinguishable from those in *Gillis v. Palmer*, 178 Ga. App. 608 (344 SE2d 446). At most, appellee's statements of assurance to appellant, informing her that her symptoms of persisting pain were normal, would under the circumstances constitute a mere misdiagnosis insufficient to raise an issue of fraud. See, e.g., *Hendrix*, supra at 203. Thus, as in *Hendrix*, we find that the appellee has pierced plaintiff's mere allegation of fraud and is entitled to summary judgment.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

### On Motion for Rehearing.

We have reconsidered our opinion in light of all relevant facts of record, together with all reasonable inferences that can be therefrom drawn, and adhere to the disposition directed.

*Motion for rehearing denied.*

Decided September 7, 1988 —
Rehearing denied September 23, 1988.

*Harold E. Martin,* for appellant.

*C. Ashley Royal*, for appellee.