### A11A1057. DEEN v. POUNDS.
(718 SE2d 68)

ADAMS, Judge.

Plaintiff/appellee Gladys Pounds brought this medical malpractice action against Roy Wendell Deen, M.D., and others contending that Dr. Deen committed various acts of negligence in prescribing her Reglan, and that because of his negligence she developed irreversible tardive dyskinesia, a neurological disorder that results in involuntary and uncontrollable movements of various parts of the body including the tongue, face, and limbs. Dr. Deen answered and subsequently filed a motion for summary judgment, contending that Ms. Pounds' claims were barred by the applicable statutes of limitation and repose. The trial court denied the motion, but granted Dr. Deen a certificate of immediate review. We granted his application for interlocutory appeal, and this appeal followed.

The record shows that Ms. Pounds filed her complaint on April 11, 2007. In her complaint she stated that Dr. Deen first prescribed her metoclopramide, under the brand name of Reglan, in April 2001 for the treatment of gastroesophageal reflux disease (GERD) and treated her with daily doses of the drug for several years; however, during the course of the litigation it was discovered that Dr. Deen actually first prescribed Reglan to Ms. Pounds in June 2000. As to her specific claims of medical negligence, Ms. Pounds alleged that Dr. Deen breached the standard of care by failing to warn her of the potential risks associated with taking Reglan, including the risk of involuntary movement disorders, and by prescribing the medication for several years without considering lowering the dose, discontinuing the drug or switching to a medication with a lower risk of involuntary movement disorders. Further, Ms. Pounds' expert opined that Dr. Deen failed to adequately assess her condition to determine if she needed to take Reglan for her GERD and failed to monitor her after she started taking the drug to determine if she needed to continue taking the medication. And one expert testified that Dr. Deen was professionally negligent because he failed to recognize certain symptoms that may have led to an earlier diagnosis of tardive dyskinesia.

Ms. Pounds also stated in her complaint that in August 2004 she developed a gait disturbance and a mouth tremor, which were

described as early clinical warning signs of tardive dyskinesia, and Dr. Deen referred her to a neurologist, Dr. Miquel Zialcita, for a neurological consult. Dr. Zialcita diagnosed Ms. Pounds with Parkinson's disease in August 2004. Ms. Pounds' complaint further stated that in December 2004 she developed symptoms described by Dr. Deen as "extrapyramidal side effects" in addition to her parkinsonism. In May 2005, Ms. Pounds was diagnosed by Dr. Stewart Factor, another neurologist, with both parkinsonism and tardive dyskinesia, and he discontinued her use of Reglan, which he believed to be the causative agent in her development of these disorders.

As required by Georgia law in medical malpractice cases, OCGA § 9-11-9.1, Ms. Pounds filed the affidavit of her expert, Dr. Alan Jacobs, with her complaint. Based upon his review of the records maintained by Dr. Deen, Dr. Zialcita and Dr. Factor, Dr. Jacobs opined that the gait disturbance Ms. Pounds developed in 2004 was a clinical sign of parkinsonism, but he described the "extrapyramidal side effects" Dr. Deen observed in February 2005 as "consistent with tardive dyskinesia in addition to signs of her reported diagnosis of Parkinson's disease." Additionally, another expert witness, Dr. Franesa Hall, testified that although she could not pinpoint or give an opinion as to exactly when Ms. Pounds' tardive dyskinesia was present and manifested itself through symptoms, it was her opinion that it was at least present by 2004 when Dr. Deen referred her to Dr. Zialcita, and that it was possible she began displaying more subtle symptoms which should have been investigated as early as October 2000.

Ms. Pounds testified by way of videotaped deposition. Ms. Pounds had moved in with Dawn Pounds, her niece's daughter, in July 2001, after she started feeling that things inside of her were not "right" and she felt it would be unsafe to drive or to continue babysitting. Although Ms. Pounds suffered from memory loss and could not pinpoint the dates and details of when she first began developing symptoms of tardive dyskinesia, Dawn testified that when Ms. Pounds first moved in with her she was not acting normally and she was afraid and scared to be alone. Dawn testified that Ms. Pounds began having involuntary movements of her tongue, hands and feet after she moved in with her, and although she could not pinpoint the precise date, these involuntary movements started within approximately six months of when Ms. Pounds moved in with her. Dawn testified that other involuntary behaviors also appeared, like humming, grunting, or burping and that when some things would seem to improve, others would get worse.

Dawn testified that they talked to Dr. Deen about these movements "every time they would go in" and that "lots" of the movements were obvious during these visits, including finger move-

ments, toe tapping and tongue thrusting. She testified that by the time Dr. Deen referred Ms. Pounds to Dr. Zialcita in August 2004, the movements were "bad" including moving her hands and feet, tapping and stomping and rocking back and forth. Dawn testified that when Ms. Pounds saw Dr. Factor in May 2005, she was "doing her movements" and he immediately diagnosed her with tardive dyskinesia.

Although Dawn was identified as the person most familiar with Ms. Pounds' symptoms and medical care, other relatives also testified that Ms. Pounds began experiencing anxiety and fearfulness prior to moving in with Dawn, and that within a "short time" after that she started experiencing involuntary movements, including tongue thrusting, humming, movements of her limbs, burping, stomping and/or tapping and rocking. Testimony was also presented that the involuntary movements Pounds was experiencing then were the same symptoms she was experiencing when she went to see Dr. Factor.

Dr. Deen's records reflected that Ms. Pounds started complaining of anxiety and a "funny" feeling within several months of starting to take Reglan. In the ensuing months, the medical notes reflect that Ms. Pounds was nervous, jittery, restless and depressed, and Dr. Deen prescribed various anti-anxiety and anti-depressant medications, and he eventually referred her to a psychiatrist.

In July to August 2004, Dr. Deen noted that Pounds was losing weight, was confused, had memory loss and had developed a gait disturbance. And he testified that by that time "there were certainly some neurological things going on, abnormalities, movement," he had not particularly noticed before. He ordered various tests, and it was also at this point that he referred her to Dr. Zialcita, who, as stated above, diagnosed her with Parkinson's disease, but did not attribute the Parkinson's symptoms to Ms. Pounds' treatment with Reglan.

Ms. Pounds continued to see both Dr. Deen and Dr. Zialcita, and her last visit to Dr. Deen was in February 2005. He testified that it was at this last visit that he first noticed the tongue and mouth movements, and if he had noticed them sooner he would have recognized it as tardive dyskinesia, but by that time she had been diagnosed by Dr. Zialcita with Parkinson's so he relied on that diagnosis. He also agreed that the movement problems he witnessed on her videotaped deposition somewhat reminded him of the problems she was having when he referred her to Dr. Zialcita. Dr. Deen testified that at the time he prescribed Reglan to Ms. Pounds he did not know that a potential side effect of taking Reglan was the development of tardive dyskinesia, and did not become aware of that possible side effect until he read the letter from Dr. Factor diagnosing

Ms. Pounds with parkinsonism and tardive dyskinesia and identifying Reglan as the causative agent.

In addition to the above diagnosis, Dr. Factor noted in his records that he considered Ms. Pounds to be one of the worst cases of tardive dyskinesia he had seen. And although he testified that he could not pinpoint the exact date of onset of the disease, he noted in his records that she had the disorder for several years, and he testified that he believed she had developed the disorder by the time Dr. Zialcita saw her in August 2004, and that "it was clearly missed on several occasions." Dr. Factor also opined in his deposition that Ms. Pounds "probably" had developed symptoms of tardive dyskinesia three years prior to when he saw her in May 2005, and that her symptoms had been getting worse within the year before he diagnosed her. He testified in his deposition that with treatment her symptoms had improved, although the underlying neurological damage was not reversed by the treatment.

1. We turn first to Dr. Deen's contention that the claims asserted here are barred by the applicable statute of limitation. Under OCGA § 9-3-71 (a), a medical malpractice action must be brought within two years after the date on which an injury or death arising from an alleged negligent or wrongful act or omission occurred. Thus, although the complaint in this case, which was filed in April 2007, was filed within two years of when the diagnosis of drug-induced tardive dyskinesia was made in May 2005, that date is not the relevant date here. First, with respect to Ms. Pounds' claims that Dr. Deen was negligent in prescribing Reglan, the relevant date is when Ms. Pounds developed drug-induced tardive dyskinesia, as that was the injury.[1] Although based on the above evidence it is clear that the precise date Ms. Pounds developed the disorder would be difficult, if not impossible, to pinpoint, the record shows that Ms. Pounds may have begun experiencing overt symptoms of the disorder within approximately six months after she moved in with Dawn Pounds, placing that date somewhere around January 2002.

Moreover, even discounting these symptoms as being manifestations of her drug-induced parkinsonism instead of drug-induced tardive dyskinesia, Dr. Factor and plaintiff's own experts opined that the symptoms of tardive dyskinesia were present by the time she was referred to Dr. Zialcita in July or August of 2004, and Dr. Deen himself testified that during the last time he saw Ms. Pounds in February 2005, he detected some of the involuntary movements

---

[1] Included here are the acts of failing to adequately assess her GERD to ascertain if she needed treatment with Reglan, failing to consider other treatment options that carried less risk of the development of involuntary movement disorders and failing to warn of the possible side effect of developing tardive dyskinesia.

associated with tardive dyskinesia, although he apparently continued to attribute them to Parkinson's disease based on the diagnosis of Dr. Zialcita. Thus, using any of these dates as the starting point, the complaint was clearly filed two years after the injury occurred here, and the trial court erred by failing to find that these claims were time barred.

Second, Ms. Pounds has alleged that Dr. Deen was negligent because he failed to recognize symptoms of the disorder earlier, and thus failed to diagnose the disease when it became manifest and failed to discontinue the drug at that time.[2] However, we find these claims also are time barred.

> The law is well established that in most misdiagnosis cases, the injury begins immediately upon the misdiagnosis; the misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis. Thus, the fact that the patient did not know the medical cause of her suffering does not affect the applicability of OCGA § 9-3-71 (a). "The true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result." [And our Supreme Court] has rejected [the] argument that after an initial misdiagnosis, a doctor's continued failure to recognize the patient's problem constitutes a continuing tort. In addition, there is no evidence in the record to support [Ms. Pounds] contention that [Dr. Deen] committed a separate act of negligence by continuing to prescribe [Reglan]. [Dr. Deen's] alleged failure to correct any previous negligence does not constitute additional acts of negligence. And, even if such an action does constitute a new and separate act of professional negligence by [Dr. Deen], the "statute of limitations on a medical malpractice claim [does not] commence[ ] upon the occurrence of a negligent act or omission on the part of the physician. It begins on the date of the patient's injury."

*Goodman v. Satilla Health Svcs.*, 290 Ga. App. 6, 8-9 (658 SE2d 792) (2008). See also *McCord v. Lee*, 286 Ga. 179, 180 (684 SE2d 658) (2009); *Kaminer v. Canas*, 282 Ga. 830, 831-832 (1) (653 SE2d 691) (2007).

Here, as stated above, construing the evidence in Ms. Pounds'

---

[2] This contention is seemingly at odds with Ms. Pounds' statement in her appellate brief that "[n]one of [her] physicians – including [Dr. Deen] – ever observed or noted any symptoms consistent with Tardive Dyskinesia . . . until Dr. Factor did so on May 10, 2005 . . . ."

favor, the evidence shows that even though she had probably developed the disorder much earlier, by the time she last saw Dr. Deen in February 2005 she was clearly exhibiting signs of the disorder that even he testified he might have recognized as tardive dyskinesia if he had not been relying on Dr. Zialcita's diagnosis. However, because her complaint was filed more than two years from this date, these claims were also barred by the statute of limitation.

Although Ms. Pounds cites case law concerning the calculation of the statute of limitation in cases involving misdiagnosis that result in a subsequent, separate injury, there is no evidence here that Ms. Pounds suffered a "new" injury, as that term has been defined by our appellate courts. *McCord*, 286 Ga. at 181 (definition of new injury); *Amu v. Barnes*, 283 Ga. 549, 551-553 (662 SE2d 113) (2008). Rather, this case is similar to *Kaminer v. Canas*, 282 Ga. 830, in which our Supreme Court held that the plaintiff's

> preexisting injury was not transformed into a new injury simply because his underlying AIDS condition remained untreated notwithstanding the increase in his symptoms. . . . Where, as here, the patient's symptoms of his untreated condition worsen over time, for statute of limitation(s) purposes, the injury occurred at the time of the alleged misdiagnosis.

(Citations and punctuation omitted.) Id. at 833-834. Thus, while the alleged subsequent negligent acts may have led to a worsening of Ms. Pounds' symptoms, these acts did not lead to a new and more deleterious condition. Compare *Cleaveland v. Gannon*, 284 Ga. 376, 377 (1) (667 SE2d 366) (2008) (reconciling holdings in *Amu v. Barnes*, 283 Ga. 553, in which the new injury exception was applied, and *Kaminer*, in which that theory was rejected).

2. Dr. Deen also moved for summary judgment based on the running of the statute of repose.

> Under Georgia law, an action for medical malpractice must be brought within five years from the date on which the negligent or wrongful act or omission occurred. OCGA § 9-3-71 (b). Unlike cases involving the medical malpractice statute of limitation, see OCGA § 9-3-71 (a), [the] focus [in cases involving the statute of repose] is on the date or dates on which appellant[ ] may have committed acts of professional negligence. The test for determining when OCGA § 9-3-71 (b)'s period of repose begins is based on the determination of when the negligent act causing the injury occurred.

*Schramm v. Lyon*, 285 Ga. 72, 73 (1) (673 SE2d 241) (2009). Moreover, a complaint may allege more than one act of professional negligence resulting in a new injury, and these separate acts are subject to separate periods of repose. Id.

As stated above, Ms. Pounds contended Dr. Deen committed several allegedly separate acts of professional negligence including failing to warn her of the risks of developing Reglan-induced involuntary movement disorders, failing to adequately assess whether she needed to take the drug for GERD, failing to consider whether another medication that did not have the risk of causing movement disorders should be prescribed instead, failing to adequately assess the appropriate dose, failing to recognize or diagnose that she had developed drug-induced tardive dyskinesia, and failing to discontinue Reglan once she exhibited signs of the disorder. To the extent these involve separate acts of medical negligence, they must be separately analyzed for purposes of determining the starting date to calculate the statute of repose. Id.

As to Ms. Pounds' claims of negligence arising from the prescription of the drug, which are, in essence, claims that Dr. Deen was negligent because he failed to appreciate and inform her of the risk of developing drug-induced tardive dyskinesia, we find that the statute of repose commenced to run on the date that Dr. Deen first prescribed Reglan, which the pharmacy records show occurred on June 2000, although Pounds stated in her complaint that the drug was first prescribed to her in April 2001. However, even accepting this later date, the five-year statute of repose had clearly run on this claim prior to the time Ms. Pounds filed suit in April 2007. Moreover, we agree with Dr. Deen that Ms. Pounds' argument that he committed multiple acts of negligence because a new, separate and distinct course of treatment was initiated each time he changed the dose or wrote a new prescription, is simply an attempt to resurrect the continuous treatment doctrine, or a variation thereof, and such attempts have been "resoundingly rejected" in this state. *Goodman v. Satilla Health Svcs.*, 290 Ga. App. at 7, and footnote cites. Likewise, his failure to warn Ms. Pounds of the dangers of developing an irreversible movement disorder while taking Reglan constituted a "single persistent negligent act," *Schramm*, 285 Ga. at 74 (2), and thus his failure to warn Ms. Pounds at subsequent visits or when he wrote new prescriptions for the drug did not constitute new independent acts of negligence so as to trigger a new period of repose. Id. at 75 (3) (cautioning that the opinion in that case should not be read as imposing a continuing duty to warn patients of risks from an existing condition at each subsequent visit). Thus, these alleged acts of negligence were clearly barred by both the statute of repose as well as the statute of limitation.

However, as analyzed above, Dr. Deen's alleged negligence in failing to recognize the signs of tardive dyskinesia and change Ms. Pounds' treatment accordingly, which are in essence claims of misdiagnosis and negligent treatment, did not occur until Dr. Deen failed to detect that Ms. Pounds was exhibiting possible symptoms of tardive dyskinesia. Although as stated above, the evidence is unclear about when Dr. Deen should have become aware of these symptoms, the evidence shows that these symptoms were probably present at least by the summer of 2004 and at the latest by February 2005, although testimony was presented that Ms. Pounds and her niece had been observing and informing Dr. Deen about these symptoms since January 2002. In any event, construing the evidence in Ms. Pounds' favor, it is not clear that these claims were barred by the statute of repose. However, as stated above, these claims were barred by the statute of limitation, and thus for the reasons stated in Division 1, the trial court erred by denying Dr. Deen's motion for summary judgment on these claims also.

*Judgment reversed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED OCTOBER 21, 2011.

*Martin Snow, John C. Edwards, Richard A. Epps, Jr.*, for appellant.

*Childers, Schlueter & Smith, C. Andrew Childers*, for appellee.