**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 8, 2018**

# In the Court of Appeals of Georgia

A18A0808. POLIS et al. v. LING et al.

McFADDEN, Presiding Judge.

This appeal is from a trial court order granting summary judgment to the defendants in a medical malpractice case on the ground that the action was barred by the applicable two-year statute of limitation. The undisputed evidence is that the misdiagnosis, which is the basis of Polis's claim occurred, at the latest, in June 2014. The complaint was filed in December 2016. So, there is no genuine issue of material fact, the defendants were entitled to judgment as a matter of law, and we must affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal of a grant of summary judgment, this [c]ourt reviews the evidence de novo to determine whether a genuine issue of material fact exists or whether the movant is entitled to judgment as a matter of law.

*MacDowell v. Gallant*, ___ Ga. App. ___ (Case No. A17A1864, decided March 1, 2018) (citation omitted).

So viewed, the evidence shows that on February 17, 2014, Sherry Polis took her 16-year-old daughter J. B. to Newnan Dermatology. On that date, physician assistant Elizabeth Ahlstrom, who was supervised by Dr. Mark Ling, prescribed triamcinolone acetonide cream for eczema on J. B.'s legs. J. B. used the cream as directed. Near the end of April or beginning of May 2014, she saw purple scar-like marks on her thighs where she had applied the cream. On May 11, 2014, J. B. showed the marks on her thighs to her mother. On June 3, 2014, Polis took J. B. back to Newnan Dermatology for an assessment of the marks. On that date, Dr. Jill Buckthal-McCuin diagnosed the marks as stretch marks typical for girls of J. B.'s age, told J. B. that there was no correlation between the cream and the marks, advised J. B. to continue using the cream for eczema, but directed her not to use it directly on the marks. The doctor also prescribed another cream for treatment of the marks.

J. B. used the creams as directed, but the marks on her legs got worse. On December 22, 2014, J. B and her mother consulted with a dermatologist at the Emory Clinic, who said that the marks were a known side effect of triamcinolone acetonide

cream and that J. B. should stop using it immediately. Pursuant to that doctor's instructions, J. B. stopped using the triamcinolone acetonide cream that day. The next day, December 23rd, Polis spoke on the phone with a doctor at Newnan Dermatology, who confirmed Dr. Buckthal-McCuin's earlier instructions that J. B. should continue to use the triamcinolone acetonide cream for the eczema, but not use it directly on the marks.

On December 16, 2016, Polis and J. B. filed a medical malpractice complaint against Ling, Buckthal-McCuin, Ahlstrom, and Newnan Dermatology. The complaint alleged in pertinent part that the defendants were negligent in failing to adequately assess and treat J. B.'s dermatological condition on her thighs, in prescribing triamcinolone acetonide cream, and in instructing her to continue using the cream despite the development of the scar-like marks on her thighs. A dermatologist's affidavit in support of the medical malpractice complaint alleged that the defendants had deviated from the standard of care by failing to adequately assess and treat J. B.'s dermatological condition on her thighs.

The defendants moved for summary judgment on the ground that the plaintiffs' medical malpractice claims were barred by the statute of limitation. After a hearing,

the trial court granted the motion. Polis and J. B. appeal from that summary judgment ruling.

> OCGA § 9-3-71 (a) provides: 'an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.' In most cases of negligent treatment and in most cases of misdiagnosis, the statute of limitation for medical malpractice will begin running at the time of the treatment or misdiagnosis. That is the time that the injury generally occurs.

*McCord v. Lee*, 286 Ga. 179, 180 (684 SE2d 658) (2009) (citations and punctuation omitted). But with respect to claims that the defendants negligently prescribed triamcinolone acetonide cream, "the relevant date is when [J. B.] developed [the marks on her thighs allegedly caused by the cream], as that was the injury." *Deen v. Pounds*, 312 Ga. App. 207, 210 (1) (718 SE2d 68) (2011).

Based on the evidence, the precise date that the marks developed "would be difficult, if not impossible, to pinpoint, [but] the record shows that [J. B. first noticed the marks around the end of April or beginning of May 2014, and showed them to her mother on May 11, 2014.]" Id. Thus, for purposes of our statute of limitation analysis, the record shows that the marks developed no later than May 11, 2014. Since the plaintiffs' medical malpractice action was filed in December 2016, more than two

4

years after the date of the injury, the claims that the defendants negligently prescribed the cream are barred by the statute of limitation.

As for any misdiagnosis claims, the latest date upon which a misdiagnosis could have occurred was June 3, 2014, when Dr. Buckthal-McCuin told J. B. that the marks on her thighs were stretch marks typical for girls her age, that there was no correlation between the cream and the marks, and that J. B. should continue using the triamcinolone acetonide cream for eczema.

> The law is well established that in most misdiagnosis cases, the injury begins immediately upon the misdiagnosis; the misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis. Thus, the fact that the patient did not know the medical cause of her suffering does not affect the applicability of OCGA § 9-3-71 (a). The true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained [her] action to a successful result. [Moreover, our Supreme Court] has rejected [the] argument that after an initial misdiagnosis, a doctor's continued failure to recognize the patient's problem constitutes a continuing tort. In addition, there is no evidence in the record to support [any] contention that [the defendants] committed a separate act of negligence by continuing to prescribe [the cream]. [The defendants'] alleged failure to correct any previous negligence does not constitute additional acts of negligence.

*Goodman v. Satilla Health Svcs.*, 290 Ga. App. 6, 8 (658 SE2d 792) (2008) (citations and punctuation omitted). See also *McCord*, supra at 180; *Kaminer v. Canas*, 282 Ga. 830, 831-832 (1) (653 SE2d 691) (2007). Because the complaint in this case was filed

5

in December 2016, more than two years after the latest possible misdiagnosis, any such claims are "barred by the two-year limitation period." *Goodman*, supra.

*Judgment affirmed. Ray and Rickman, JJ., concur.*