**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 17, 2019**

# In the Court of Appeals of Georgia

A19A1349. LYLAH CARROLL, AS ADMINISTRATOR FOR THE ESTATE OF BYRON TYRONE CARROLL v. PIEDMONT MEDICAL CARE CORPORATION et al.

DILLARD, Presiding Judge.

Lylah Carroll, acting in her capacity as administrator for the estate of her deceased husband (Byron Tyrone Carroll), appeals from the trial court's grant of summary judgment in favor of Piedmont Medical Care Corporation and Piedmont Hospitalist Physicians, L.L.C.[1] The Estate argues that the trial court erred in granting summary judgment to Piedmont on the basis that its medical-malpractice claims were

---

[1] We refer to Piedmont Medical Care Corporation and Piedmont Hospitalist Physicians, L.L.C. collectively as "Piedmont."

barred by the statute of limitation when the limitation period was tolled by fraud.[2] For

the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the non-moving party (*i.e.*, the Estate),[3]

the record shows that Byron was hospitalized on February 19, 2012, after being

---

[2] Piedmont devotes much of its appellee brief to arguing against any assertion that the so-called "new injury" exception applies to this case. *See generally Amu v. Barnes*, 283 Ga. 549, 551-52 (662 SE2d 113) (2008) ("The 'new injury' exception is an attempt to reconcile the statute's requirement that the period of limitations commence on the date of the patient's 'injury,' on the one hand, with a recognition, on the other, that not all 'injuries' are necessarily the immediate consequence of a physician's negligent misdiagnosis. . . . A patient suffers a 'new injury' if he or she has a relatively benign and treatable precursor medical condition which, as a proximate result of being misdiagnosed, is left untreated and subsequently develops into a much more serious and debilitating condition."). But the Estate did not enumerate this as error or provide argument or citation to authority in support of such a contention. *See Ga. Cas. & Sur. Co. v. Salter's Indus. Serv., Inc.*, 318 Ga. App. 620, 623 (1) (734 SE2d 415) (2012) (holding that appellants abandoned specific argument by failing to include it in appellate brief); *Smyrna Dev. Co. v. Whitener Ltd. P'ship*, 280 Ga. App. 788, 789-90 (1) (635 SE2d 173) (2006) (holding that appellant waived and abandoned argument that trial court's award of summary judgment against it was erroneous, even though it asserted in its appellate brief that there were "abundant issues of material fact" precluding summary judgment, when appellant did not enumerate the award of summary judgment as error). As a result, we do not address any argument as to the applicability or inapplicability of the "new injury" exception to this case. *See* Ct. of App. R. 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

[3] *See, e.g.*, *Gaddis v. Chatsworth Health Care Ctr., Inc.*, 282 Ga. App. 615, 617 (2) (639 SE2d 399) (2006) ("We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant.").

transported by ambulance following complaints of abdominal pain. Thereafter, from February 19 until February 26, Byron underwent a number of diagnostic tests and examinations by various professionals within the hospital, but he was never administered a CT scan, despite one having been ordered by a physician on February 21. On February 26, Byron—who at that point was in the Critical Care Unit—continued to experience increasing abdominal discomfort and other symptoms, and a CT scan was finally performed. This scan revealed what appeared to be perforation of Byron's colon, and he underwent an urgent laparotomy, during which doctors discovered stool throughout his abdomen, a perforation of the colon, and early necrosis of the bowel. Then, during a second exploratory laparotomy on March 1, 2012, doctors determined that the bowel was gangrenous and nonviable, and end-of-life protocols were discussed with the family. Byron passed away later that evening.

Lylah filed a complaint for damages against Piedmont and a number of other defendants[4] on February 14, 2017, asserting claims for medical negligence related to

[4] The other originally named defendants were North Atlanta Surgical Associates, P.C.; Lung Care Specialists, P.C.; Russell A. Wilson, M.D.; and Olumuyiwa Joshua, M.D. None of these defendants are involved in the current appeal. These defendants were eventually dismissed with prejudice with the consent of the Estate.

the care Byron received during the hospitalization that ended with his death. This complaint was filed as a renewal of a prior action that was filed on May 31, 2016, and dismissed without prejudice on August 15, 2016. On March 15, 2017, Piedmont answered *and* filed a motion to dismiss the renewal action, contending that it was barred by the statute of limitation.

Thereafter, on April 14, 2017, the Estate filed an amended complaint, in which it alleged that the statute of limitation in the case was tolled by fraud on behalf of Piedmont, and the Estate also filed a response to Piedmont's motion to dismiss. Piedmont then filed an answer to the amended complaint, a reply to the Estate's response to its motion to dismiss, and a motion to dismiss the amended complaint. The Estate then filed a *second* amended complaint. Piedmont, once again, moved to dismiss the second amended complaint.

The trial court *sua sponte* converted Piedmont's motion to dismiss into a motion for summary judgment, ordering the parties to file evidence pertinent to the motion. Following the submission of evidence and a hearing on the motion,[5] the trial

---

[5] The record indicates that a hearing was conducted on August 2, 2018, and the notice of appeal requested that the clerk of court "include all transcripts from hearings herein." But no transcript was included with the record transmitted to this Court. *See Hill v. Bd. of Regents of Univ. Sys. of Ga.*, 346 Ga. App. 830, 831 (816 SE2d 296) (2018) ("If an appellant desires that a transcript be made part of the record on appeal,

4

court granted Piedmont's request that the case be dismissed. In doing so, the court concluded that no fraud tolled the running of the statute of limitation and, thus, the time limit expired prior to the filing of the initial lawsuit. This appeal by the Estate follows.

The Estate argues that the trial court erred in concluding that the limitation period was not tolled by fraud on the part of Piedmont. We disagree.

In actions alleging medical malpractice, the claim must be filed "within two years after the date on which an injury . . . arising from a negligent or wrongful act

---

she must say so in her notice of appeal, have the transcript prepared at her own expense, and have it filed with the trial court within 30 days of the filing of the notice of appeal, unless she obtains an extension of time from the trial court."). Neither party has requested supplementation of the record, and it was the Estate's burden to ensure that the transcript was included in the record transmitted on appeal. *See Quarterman v. Lee*, 291 Ga. App. 603, 603 (662 SE2d 234) (2008) ("The burden is on the party alleging error to show it affirmatively by the record." (punctuation omitted)); *Vaughn v. Roberts*, 282 Ga. App. 840, 840 n.5 (640 SE2d 293) (2006) ("It is the appellant's burden to ensure that all necessary transcripts are included in the record on appeal."). In the absence of the transcript, to the extent that any additional evidence was presented at the hearing, we presume that evidence supported the trial court's ruling. *See Hensley v. Young*, 273 Ga. App. 687, 687 (615 SE2d 771) (2005) ("[When] an omitted transcript is necessary for this Court to review the alleged error, we are required to presume that the lower court ruled correctly and that the evidence presented at the hearing supported that court's judgment.").

or omission occurred."[6] Thus, in most cases of negligent treatment or misdiagnosis, the statute of limitation for medical malpractice will "begin running at the time of the treatment or misdiagnosis."[7] But the statute of limitation is tolled if "the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action[.]"[8] In those cases, the statute of limitation runs from the time of the discovery of the fraud.[9] Importantly, even if there

---

[6] OCGA § 9-3-71 (a); *accord Wilson v. Obstetrics & Gynecology of Atlanta, P.C.*, 304 Ga. App. 300, 305 (2) (696 SE2d 339) (2010).

[7] *Polis v. Ling*, 346 Ga. App. 185, 187 (816 SE2d 93) (2018) (punctuation omitted); *accord McCord v. Lee*, 286 Ga. 179, 180 (684 SE2d 658) (2009).

[8] OCGA § 9-3-96; *accord Wilson*, 304 Ga. App. at 305 (2). Neither party disputes that OCGA § 9-3-92 tolled the running of the statute of limitation between the time of Byron's death on or about March 1, 2012, and the appointment of Lylah as administrator of the Estate on June 2, 2014. *See* OCGA § 9-3-92 ("The time between the death of a person and the commencement of representation upon his estate . . . shall not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years[.]"); *Harrison v. Holsenbeck*, 208 Ga. 410, 411 (67 SE2d 311) (1951) ("Limitation statutes run against estates, but when estates are [u]nrepresented, such statutes are tolled between the death of a person and the appointment of a representative . . . for a period of five years provided representation is taken within that period of time."); *Hayes v. Hines*, 347 Ga. App. 802, 807 (2) (821 SE2d 52) (2018) (physical precedent only) (same).

[9] OCGA § 9-3-96; *accord Wilson*, 304 Ga. App. at 305 (2); *see Dove v. Ty Cobb Healthcare Sys., Inc.*, 305 Ga. App. 13, 15 (699 SE2d 355) (2010) ("If a defendant is shown to have committed a fraud which debarred or deterred a plaintiff

6

is evidence of fraud, "the statute of limitation is not tolled when the plaintiff knew all facts necessary to show malpractice before the running of the period of limitation."[10]

Here, the Estate argues that Piedmont's negligence resulted in Byron's death on March 1, 2012. In the second amended complaint, the Estate alleges that,

> [a]s a result of the surgical discovery of the bowel rupture and the resulting significant tissue death throughout [Byron's] small bowel, [Piedmont] knew this injury was caused by and was the direct result of [Piedmont's] negligence in failing to properly work-up, evaluate and treat [Byron's] bowel obstruction during the seven days prior to the discovery of the rupture on February 26, 2012.

The Estate then alleges that,

> [d]espite their knowledge of the basis and cause of the severe rupture injury and tissue death [Byron] experienced, [Piedmont] failed to inform the Plaintiff that [Byron's] severe injury and his resulting death were related to and directly caused by [Piedmont's] negligent acts and omissions in the 7 days preceding the detection of this injury.

from bringing an action, the statute of limitation is tolled until the fraud is discovered or reasonably should have been discovered.").

[10] *Dove*, 305 Ga. App. at 15 (punctuation omitted); *accord Hendrix v. Schrecengost*, 183 Ga. App. 201, 203 (2) (358 SE2d 486) (1987); *see Hamilton v. Mitchell*, 165 Ga. App. 717, 718 (302 SE2d 589) (1983) (holding that evidence did not show that patient was prevented, by any fraud on part of physician, from learning true facts concerning her breast cancer after April 17, 1978, even if his alleged fraud deterred her until that date).

And it is this failure to disclose what the Estate contends is a "causal connection" between the failure to earlier obtain a CT scan and Byron's resulting injuries that constitutes the "constructive and actual fraud and misrepresentation sufficient to toll the applicable limitation period."

In response to Piedmont's motion to dismiss the second amended complaint, the Estate argued that the relevant "injury occurred on February 26, 2012," and, as a result, "the injury arising out of [Piedmont's] negligence occurred at that point and the limitation period would not begin to run until that date." But the Estate *also* maintains that the "limitation period did not begin to run until much later, at some point *after* [Byron's] death" due to Piedmont's alleged failure to disclose the cause of the bowel rupture (*i.e.*, the alleged delay in performing a CT scan). In other words, the Estate asserts that fraud tolled the running of the statute of limitation from February 26, 2012, until some unspecified date. But like the trial court, we disagree.

After the trial court converted the motion to dismiss into a motion for summary judgment, the parties submitted competing affidavits. The Estate submitted affidavits from family members, averring that they were never told a CT scan was necessary or appropriate. These family members also indicated that, in the days after a CT scan and surgery were performed on February 26, 2012, no one ever informed them that

8

(1) the bowel rupture and damage could have been prevented by conducting an earlier CT scan; (2) CT scans are the "gold standard" for diagnosing similar medical situations; (3) an earlier CT scan likely would have revealed a bowel obstruction prior to the extensive tissue death; and (4) a reasonably timed CT scan might have prevented Byron's death. And in her affidavit, Lylah contends that "a few months" after Byron's death (while speaking with an unnamed acquaintance who had a connection to the hospital), she was told that "there was still discussion at the hospital about what had happened and what had gone wrong with [Byron's] treatment."[11] It was at this point that Lylah claims she realized "there might be an issue pertaining to the quality and standard of care provided to [her] husband by his attending physicians."

Piedmont responded with affidavits from various members of Byron's care team during his hospitalization, who averred that they did not believe the failure to obtain a CT scan prior to February 26, 2012, caused Byron's injuries and that they at no point withheld relevant medical information from or misrepresented any such information to Byron or his family. Piedmont's custodian of records also averred that

---

[11] The Estate did not provide an affidavit from this acquaintance.

9

she received multiple requests from the Estate's attorney for the provision of medical records, and that these records were provided when required fees were paid.

Given the foregoing, the Estate failed to allege or provide evidence of facts sufficient to establish fraud that would toll the running of the statute of limitation as of February 26, 2012. Indeed, the key element for such tolling to apply is that "the fraud must have debarred or deterred plaintiff from bringing the suit timely."[12] In other words, the fraud must "conceal the cause of action and cut plaintiff off from suing, preclude him, hinder him, shut him out, or exclude him to debar him from bringing suit for purposes of suspension of the running of the statute of limitation."[13] And when there is "a confidential relationship and . . . a duty to disclose or the right in the plaintiff to expect full communication of the facts, concealment per se or

---

[12] *Charter Peachford Behavioral Health Sys. v. Kohout*, 233 Ga. App. 452, 457 (c) (504 SE2d 514) (1998); *see Bray v. Dixon*, 176 Ga. App. 895, 896 (338 SE2d 872) (1985) ("OCGA § 9-3-96 stops the limitation if defendant is guilty of fraud by which plaintiff is debarred or deterred from bringing an action.").

[13] *Kohout*, 233 Ga. App. at 457-58 (c); *see Kane v. Shoup*, 260 Ga. App. 723, 726 (2) (580 SE2d 555) (2003) ("[W]hile a physician has a fiduciary duty to inform his patient of any injury or negligent mistreatment, to establish fraud a plaintiff must present evidence that the physician knew that the plaintiff was injured in the ways plaintiff contends; that the physician knew that his violations of the standard of care caused such injuries; and that he intentionally concealed such fact.").

intentional silence amounts to actual fraud that tolls the statute."[14] A physician-patient relationship is a classic confidential relationship, and "silence or failure to disclose what should be said or disclosed can amount to fraud."[15] Nevertheless, there must be evidence that "there was an intent to conceal by silence or that the representations were false when made and were intended to mislead."[16]

In this case, there is no evidence that any misrepresentations were made to Byron or his family; and as to the issue of silence, there is no evidence or suggestion that the Piedmont actors believed or were aware that the failure to obtain an earlier CT scan resulted in Byron's death, as the Estate alleges. Thus, while the failure to

---

[14] *Kohout*, 233 Ga. App. at 458 (c).

[15] *Kohout*, 233 Ga. App. at 458 (c) (punctuation omitted); *see Shved v. Daly*, 174 Ga. App. 209, 210 (329 SE2d 536) (1985) ("[When] persons sustain toward another a relation of trust and confidence, their silence when they ought to speak is as much a fraud in law as an actual affirmative false representation." (punctuation omitted)); *Wade v. Thomasville Orthopedic Clinic, Inc.*, 167 Ga. App. 278, 281 (2) (306 SE2d 366) (1983) (same).

[16] *Kohout*, 233 Ga. App. at 458 (c); *see Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 849 (1) (507 SE2d 411) (1998) ("A confidential relationship between the parties imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care. But the fraud itself—the defendant's intention to conceal or deceive—still must be established, as must the plaintiff's deterrence from bringing suit.").

recognize this is arguably evidence of negligence, it is not evidence of fraud that

would be sufficient to toll the statute of limitation.[17] Furthermore, after Byron's death,

---

[17] *See Waycross Urology Clinic, P.C. v. Johnson*, 279 Ga. App. 195, 199 (630 SE2d 807) (2006) ("At best the testimony of [plaintiff's] expert creates an issue of fact as to whether [the doctor] was negligent. Nothing in the record reflects that [the doctor] knew at any time that his treatment or advice to [the plaintiff] was in error, nor is there any evidence that he fraudulently withheld such information from [the plaintiff]."); *Rowell v. McCue*, 188 Ga. App. 528, 530 (373 SE2d 243) (1988) (rejecting assertion of fraud when there was no evidence by which to infer that doctor "had any knowledge of improper conduct on his part or that he tried to cover up such conduct in any way"); *Shved*, 174 Ga. App. at 210 (holding that there was no evidence that appellees knowingly failed to inform patient that he received excessive radiation due to arithmetic miscalculations and overlapping areas of radiation when "nothing whatsoever . . . suggest[s] that these mistakes were discovered by appellees prior to the institution of the instant lawsuit," and "[w]hile this failure may be evidence of negligence, it is not evidence of fraud which would toll the statute of limitation"). *Cf. MacDowell v. Gallant*, 344 Ga. App. 856, 860 (811 SE2d 513) (2018) (holding that doctor's admitted failure to inform patient that her dental implants were failing due to improper placement, despite multiple followup visits, amounted to fraudulent concealment that tolled statute of limitation); *Wilson*, 304 Ga. App. at 306-08 (2) (holding that there was a question of fact as to fraud that tolled statute of limitation when parents were never told by doctors that their daughter's death at birth resulted from injuries that were caused by medical errors); *Lorentzson v. Rowell*, 171 Ga. App. 821, 826 (321 SE2d 341) (1984) (holding that question of fact remained on whether fraud tolled statute of limitation when there was evidence than plaintiff had asked doctor if prescription drug was the cause of his eye problems and doctor had evaded discussing same); *Leagan v. Levine*, 158 Ga. App. 293, 293-94 (1) (279 SE2d 741) (1981) (holding that question of fact remained on whether fraud tolled statute of limitation when evidence conflicted on whether patient was told that her complications were related to an earlier performed procedure and that she did not learn until years later than the earlier procedure had resulted in her bowels being burned).

there is no allegation of or evidence that Piedmont attempted to conceal anything from the Estate when Piedmont provided the Estate with the requested medical records, and there are no allegations that Piedmont in any way altered those records.[18] Indeed, the medical records were subsequently reviewed by the Estate's expert, who reached his conclusion that Piedmont was negligent on May 13, 2016, *before* the statute of limitation expired.

Accordingly, assuming that the relevant injury occurred on February 26, 2012, as the Estate alleges, the statute of limitation began running at that time and did so for five days, until March 1, 2012, when Byron died. Thereafter, the limitation period was tolled until Lylah was appointed as administrator of the Estate on June 1, 2014.[19]

---

[18] *See Shved*, 174 Ga. App. at 210 (holding that appellant did not establish fraudulent concealment when, *inter alia*, there was no evidence that appellees attempted to conceal negligence). *Cf. Quattlebaum v. Cowart*, 182 Ga. App. 473, 474 (2) (356 SE2d 91) (1987) (holding that there was question of fact as to fraud to toll statute of limitation when "record support[ed] a reasonable inference that appellant knowingly attempted to conceal his negligence throughout his post-January 2, 1974 relationship with appellees"); *Sutlive v. Hackney*, 164 Ga. App. 740, 742 (297 SE2d 515) (1982) (holding that there was a question of fact as to fraud to toll statute of limitation when there was evidence that could suggest knowledge of negligence and an attempt to conceal same by performing later procedures), *overruled on other grounds by Hunter, Maclean, Exley & Dunn*, 269 Ga. 844.

[19] *See* OCGA § 9-3-92 ("The time between the death of a person and the commencement of representation upon his estate or between the termination of one administration and the commencement of another shall not be counted against his

13

Thus, the Estate had until June 1, 2016, minus five days, in which to file suit—meaning that the statute of limitation expired on May 27, 2016, and the action filed on May 31, 2016, was time-barred.[20]

estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years. At the expiration of the five years the limitation shall commence, even if the cause of action accrued after the person's death."); *Goodman v. Satilla Health Servs., Inc.*, 290 Ga. App. 6, 9 (658 SE2d 792) (2008) (explaining that statute of limitation was tolled on medical-malpractice claim until the appointment of estate's representative).

[20] We reject the Estate's assertion that under OCGA § 51-4-5, the statute of limitation did not begin to run until the date of Byron's death. The Estate provides no citation to authority in support of this claim, and the plain language of the statute speaks to who may bring a cause of action and recover on behalf of a deceased individual, and what damages may be recovered. *See* OCGA § 51-4-5 (a) ("When there is no person entitled to bring an action for the wrongful death of a decedent under Code Section 51-4-2 or 51-4-4, the administrator or executor of the decedent may bring an action for and may recover and hold the amount recovered for the benefit of the next of kin. In any such case the amount of the recovery shall be the full value of the life of the decedent."); OCGA § 51-4-5 (b) ("When death of a human being results from a crime or from criminal or other negligence, the personal representative of the deceased person shall be entitled to recover for the funeral, medical, and other necessary expenses resulting from the injury and death of the deceased person."). Indeed, the Estate seeks to recover "damages for the extreme conscious pain, suffering and mental anguish [Byron] experienced prior to his death" and "the expenses of his last illness" in addition to his funeral and related expenses, all due to alleged medical malpractice. This is *not*, then, a wrongful death case. *Cf. Williams v. Ga. Dep't of Human Res.*, 272 Ga. 624, 626 (532 SE2d 401) (2000) ("[A] claim for wrongful death does not accrue until the death occurs."); *Lovett v. Garvin*, 232 Ga. 747, 748 (208 SE2d 838) (1974) (holding that because wrongful-death claim is for injury sustained by survivor as a result of the death, not for the injury suffered by the deceased, husband had claim that accrued at time of wife's death, not at time

14

For all these reasons, we affirm the trial court's grant of summary judgment to Piedmont.

*Judgment affirmed. Gobeil and Hodges, JJ., concur.*

---

injuries were inflicted).

15