A06A0557. KITCHENS et al. v. BRUSMAN et al.
(633 SE2d 585)

ADAMS, Judge.

Jill Kitchens died, and Trammell Kitchens, her husband and the administrator of her estate, brought suit against a pathologist, his

---

[21] *Dent v. Candler Hosp.*, 236 Ga. App. 540, 542 (2) (512 SE2d 392) (1999).

practice, and a hospital. He brought suit on his own behalf for wrongful death and on behalf of the estate for pain and suffering. The trial court granted summary judgment in favor of all defendants and held that Kitchens failed to file suit within the relevant statutes of limitation. Kitchens appeals. Notably, the court's order gives the wrong date for when suit was filed. And none of the defendants sought summary judgment on Mr. Kitchens' personal suit for wrongful death. At the request of this Court, the parties have entered a stipulation to correct these items.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

Construed in favor of Kitchens, the evidence shows that on October 31, 1997, Mrs. Kitchens presented to Southern Regional Health System, Inc. d/b/a Southern Regional Medical Center ("Southern Regional") with pain and swelling in her left breast. A mass was drained and a biopsy sample was taken. Three days later, Dr. Harold Paul Brusman reviewed the specimen and concluded it was not malignant. Mrs. Kitchens healed from the procedure and had no further problems until 1999.

In February 1999, Mrs. Kitchens complained about a lump in her breast and in April or May she experienced breast pain, coughing, and difficulty breathing. In August she had more symptoms, and finally, on October 21, 1999, she was diagnosed with advanced breast cancer and later with lung cancer.

On April 14, 2000, Mr. and Mrs. Kitchens were married, but on October 4 of that year, Mrs. Kitchens died. On January 22, 2002, Kitchens was appointed temporary administrator of his wife's estate. He filed suit on October 3, 2002, exactly two years after her death but more than two years after symptoms of a problem reappeared in early 1999.

1. *Wrongful Death.* An action for wrongful death must be brought within two years, but it " 'accrues' to the heirs at death. . . ." (Citations and footnotes omitted.) *Miles v. Ashland Chem. Co.*, 261 Ga. 726, 727-728 (410 SE2d 290) (1991); OCGA § 9-3-33 (two-year limitation on claims of personal injury). The suit was filed within two years of Mrs. Kitchens' death. The parties have stipulated that the statute had not run on this claim, therefore this aspect of the trial court's decision is reversed.

2. *The Estate's Claim.* An action for medical malpractice must be brought "within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." OCGA

§ 9-3-71 (a).[1] "[I]n most misdiagnosis cases, the injury begins immediately upon the misdiagnosis. . . ." (Citations omitted.) *Hughley v. Frazier*, 254 Ga. App. 544, 546 (1) (562 SE2d 821) (2002). If the victim experiences symptoms of the same injury before and after the misdiagnosis, then the date of the misdiagnosis is the date of the injury. Id. But if a misdiagnosis results in a new or subsequent injury, the statute of limitation runs from the date of the new injury or from the date symptoms attributable to the new injury are manifest to the plaintiff.[2]

If Mrs. Kitchens' 1999 symptoms were symptoms of the same injury that existed at the time of the alleged misdiagnosis, then the claim is barred by the two-year limitation period. But there is an issue of fact as to whether the metastasized breast and lung cancer discovered in 1999 was a new injury. Dr. Brusman's own brief states, "It is uncontradicted that following the alleged misdiagnosis in November of 1997, Mrs. Kitchens' left breast healed from the incision and drainage, and she had no further problems . . . until [May or June 1999]." And, the hospital admits that "[i]t is impossible to determine a precise date that Mrs. Kitchens developed metastic breast cancer to her lungs." Therefore, for the purpose of summary judgment only, we construe the facts to mean that the 1999 symptoms constituted a new or subsequent injury and that the injury occurred at the latest by May or June 1999.

But suit was not filed until October 2002, over two years after her 1999 symptoms developed. Some tolling, however, is applicable. Statutes of limitation are tolled for an estate between the date of death and "the commencement of representation upon his estate. . . ." OCGA § 9-3-92. Mr. Kitchens was appointed as the *temporary* administrator on January 22, 2002. He contends that OCGA § 9-3-92 tolls periods of limitation until a *permanent* administrator is appointed, citing *Deller v. Smith*, 250 Ga. 157 (296 SE2d 49) (1982), and because he filed suit before a permanent administrator was appointed, the suit was timely filed.

---

[1] The five-year statute of repose is not an issue. See OCGA § 9-3-71 (b). The complaint was filed less than five years after the alleged misdiagnosis.

[2] See, e.g., *Walker v. Melton*, 227 Ga. App. 149 (489 SE2d 63) (1997) (a worsening of the victim's vertebra compression from 50 to 66 percent and other new injuries did not manifest themselves for more than 18 months after the misdiagnosis); *Staples v. Bhatti*, 220 Ga. App. 404 (469 SE2d 490) (1996) (injury when small cancer was allowed to grow and spread to lymph node); *Whitaker v. Zirkle*, 188 Ga. App. 706 (374 SE2d 106) (1988) (subsequent metastasis of previously unmetastasized cancer cells constituted a new injury arising out of the failure to diagnose cancer). Compare *Burt v. James*, 276 Ga. App. 370 (623 SE2d 223) (2005) (misdiagnosis was the injury, not on-going symptoms).

In *Deller v. Smith*, the Supreme Court affirmed that "'the appointment of a temporary administrator does not result in representation of the estate for purposes of the running of the statute of limitation either in favor of, or against, the estate,'" quoting our decision in *Smith v. Deller*, 161 Ga. App. 112, 114 (288 SE2d 825) (1982). *Deller v. Smith*, 250 Ga. at 159 (1) (b).

The appellees assert that the reasoning found in the Supreme Court's decision and dicta from other case law suggest that tolling ceases when a representative who is authorized to file suit is appointed. See *Walden v. John D. Archbold Mem. Hosp.*, 197 Ga. App. 275, 279 (4) (398 SE2d 271) (1990). And, they argue, because a temporary administrator, such as Mr. Kitchens, is authorized to file a personal injury action, the tolling period ceased to run when he was appointed on January 22, 2002. See id. Under this reasoning, of the 41 months that elapsed between May 1999 (when she clearly had new symptoms) and before suit was filed in October 2002, only about 16 months were tolled. Therefore, the two-year period of limitation had run because at least 25 months of "un-tolled" time had passed.

But *Deller v. Smith* is controlling, and it has not been overruled. See also *Baumgartner v. McKinnon*, 137 Ga. 165 (73 SE 518) (1911) (the fact that a temporary administrator may be authorized to file suit does not alter the rule). And the Court in *Walden* specifically stated that it was "unable to address the effect OCGA § 9-3-92 may have on the issues in this case" and that its discussion of that Code section was "at best, . . . dicta." *Walden*, 197 Ga. App. at 279-280 (4).[3] Thus, the applicable limitation period was tolled from Mrs. Kitchens' death until suit was filed. Accordingly, because there is an issue of fact as to when the applicable statute began to run and because the statute was tolled after Mrs. Kitchens' death, the trial court erred by granting summary judgment on the estate's claim for pain and suffering.

The appellees argue our holding would mean that by seeking appointment as a temporary administrator, a surviving spouse could effectively toll the statute of limitation for an unlimited amount of time. But the five-year statute of repose would establish an upper time limit under these circumstances. See OCGA § 9-3-71 (b). See also *Simmons v. Sonyika*, 279 Ga. 378, 381 (614 SE2d 27) (2005) ("the unrepresented estate statute does not toll the statute of ultimate repose in medical malpractice actions").

---

[3] See also *Fisher v. Coffee Regional Med. Center*, 268 Ga. App. 657 (602 SE2d 135) (2004) (distinction between the effect of OCGA § 9-3-92 on temporary versus permanent administrators never raised or considered).

3. Although the trial court granted summary judgment on the ground that Kitchens had failed to file suit within the relevant statutes of limitation, Southern Regional also sought summary judgment on the ground that Kitchens failed to present any evidence to support the allegation that Southern could be vicariously liable for Brusman's actions. A trial court's grant of summary judgment will be affirmed if it is right for any reason. See *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002).

Kitchens admits that Brusman was not an actual or apparent agent of the hospital. Instead, he contends that Southern Regional is liable for Dr. Brusman's actions because Brusman's employer, South Suburban, and the hospital were joint venturers. Kitchens asserts that the hospital holds the license to operate the pathology lab, and he argues that the hospital's contract with South Suburban to provide pathology services shows that the two entities were joint venturers.

"A joint venture 'arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control.' " (Footnote omitted.) *Rossi v. Oxley*, 269 Ga. 82 (1) (495 SE2d 39) (1998). Without the element of mutual control, no joint venture can exist. Id. at 83. See also *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (479 SE2d 751) (1997); *Security Dev. & Investment Co. v. Williamson*, 112 Ga. App. 524, 525 (145 SE2d 581) (1965). The contract for professional services between Southern Regional and South Suburban specifically provides that the hospital did not have, and could not exercise, any control or direction over the manner in which independent-contractor pathologists provided pathology services. The contract also provides that South Suburban is responsible for "recruiting, contracting, scheduling, compensating and supervising all physicians" and that it "shall supervise and direct the laboratory services of anatomical and clinical pathology."

There is simply no evidence that the hospital had a right of mutual control of the manner in which Dr. Brusman provided pathology services. See, e.g., *Kelleher v. Pain Care of Ga.*, 246 Ga. App. 619, 620-621 (540 SE2d 705) (2000) (no joint venture where agreements showed that clinic had no right to control physician's treatment of his patients). Kitchens has not shown how the fact that the hospital may hold the license for the lab, establishes a right of mutual control sufficient to create a joint venture. See *Pope v. Goodgame*, 223 Ga. App. 672, 674 (2) (c) (478 SE2d 636) (1996) ("mere existence of a business interdependency does not create a joint venture") (citations omitted). Therefore summary judgment was properly granted to Southern Regional.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Mikell, J., concur.*

DECIDED JUNE 27, 2006.

*David E. Betts*, for appellants.

*Carlock, Copeland, Semler & Stair, Wayne D. McGrew III, Kim M. Ruder, Greenberg Traurig, Lori G. Cohen, Christiana C. Jacxsens*, for appellees.