S07G1818. AMU et al. v. BARNES et al.

(662 SE2d 113)

CARLEY, Justice.

On January 12, 2000, Wilbert Barnes visited his physician, Dr. Chuckwudi Bato Amu, with a complaint of rectal bleeding. Dr. Amu diagnosed a hemorrhoid condition and prescribed suppositories to relieve the discomfort. Within two weeks, the bleeding stopped completely. Believing that the hemorrhoid condition diagnosed by Dr. Amu had resolved itself, Mr. Barnes never again consulted that physician. In 2002, Mr. Barnes began to see Dr. Bruce Ramsdell as his primary care physician. Over the next year, he had several appointments with Dr. Ramsdell, none of which revealed the existence of a colon problem.

In the Spring of 2004, Mr. Barnes began to have episodes of abdominal cramping, nausea and dizziness. In June, those episodes became more severe, and were accompanied by a recurrence of rectal bleeding. Blood work revealed that Mr. Barnes had severe anemia, and Dr. Ramsdell referred him to a gastroenterologist who performed a colonoscopy. In the course of that procedure, a large tumor was discovered which was determined to be cancerous. The cancer discovered in Mr. Barnes' colon had spread, and was classified as terminal.

In December of 2004, Mr. Barnes and his wife (Appellees) filed a medical malpractice action against Dr. Amu and his employer, Atlanta Medical Care, PC (Appellants), alleging a claim for negligent misdiagnosis. Appellants answered and raised the statute of limitations as an affirmative defense. They did not formally move to dismiss on that ground. At trial, however, they filed a motion in limine, contending that the applicable two-year period of limitations began to run from the date of the alleged misdiagnosis in January of 2000 and, thus, had expired prior to the initiation of the lawsuit. The trial court denied the motion and allowed the trial to proceed, concluding that the statute of limitations commenced when the symptoms of metastatic colon cancer first manifested themselves to Mr. Barnes in 2004.

At trial, Mr.

> Barnes' experts opined that Dr. Amu should have had a sigmoidoscopy or colonoscopy performed on [Mr.] Barnes within a few months of the January 12 appointment. They further opined to a reasonable degree of medical certainty that if Dr. Amu had complied with the standard of care, the visual inspection of the colon would have revealed either a pre-malignant polyp or a very early malignancy that had not yet spread to the lymph nodes and liver, which could have been successfully removed surgically without any further complications.

*Amu v. Barnes*, 286 Ga. App. 725, 727-728 (650 SE2d 288) (2007). The jury returned a verdict for Appellees, and the trial court entered judgment against Appellants.

On appeal, Appellants raised the statute of limitations issue. The Court of Appeals recognized that, as a general rule, the period of limitations begins to run immediately on the date of the alleged negligent misdiagnosis. Nevertheless, the trial court's ruling was affirmed, based on

> a limited exception to this general rule which provides that "(w)hen a misdiagnosis results in subsequent injury that is difficult or impossible to date precisely, the statute of limitation[s] runs from the date symptoms attributable to the new injury are manifest to the plaintiff." [Cits.] This is known as the "subsequent injury" or "new injury" exception. [Cits.]

*Amu v. Barnes*, supra at 729 (1). Appellants' application for certiorari was granted, in order to address the continued viability of the "new

injury" exception in light of our recent decision in *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007).

"[A]n action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." OCGA § 9-3-71 (a). Thus, the focus in this case is not on the date that Dr. Amu may have committed an act of medical malpractice, but on the date that Mr. Barnes suffered an "injury" as a result of that professional negligence. As the Court of Appeals correctly observed,

> "[t]his is a case of misdiagnosis. 'In most such cases, the injury begins immediately upon the misdiagnosis due to pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis.' (Cit.)" [Cit.] Thus, in most misdiagnosis cases, the two-year statute of limitations . . . begin[s] to run simultaneously on the date that the doctor negligently failed to diagnose the condition and, thereby, injured the patient.

*Kaminer v. Canas*, supra at 831-832 (1). Dr. Amu failed to diagnose Mr. Barnes' condition in January of 2000. Therefore, the statute of limitations ran in January of 2002 as to the pain, suffering, or economic loss that Mr. Barnes suffered as a result of the misdiagnosis of his condition as it had existed two years earlier. This is true even though Mr. Barnes may have had no knowledge of his actual medical condition during the limitations period. *Frankel v. Clark*, 213 Ga. App. 222, 223-224 (444 SE2d 147) (1994).

However, a statute of limitations "is 'a procedural rule limiting the time in which a party may bring an action for a right which has *already accrued.*' [Cit.]" (Emphasis supplied.) *Young v. Williams*, 274 Ga. 845, 847 (560 SE2d 690) (2002). " '(T)he true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.' [Cits.]" *Allrid v. Emory Univ.*, 249 Ga. 35, 36 (1) (a) (285 SE2d 521) (1982). "[A]n action for personal injury does not 'accrue' until the tort is complete, and a tort is not complete until injury is sustained. [Cit.]" *Shessel v. Stroup*, 253 Ga. 56, 57 (316 SE2d 155) (1984). Thus, OCGA § 9-3-71 (a) would not bar Mr. Barnes' pursuit of an additional claim if, subsequent to January 2000, he suffered another "injury" as a proximate result of the original misdiagnosis. The statute establishes the occurrence of an "injury" as the trigger for commencement of a medical malpractice claim, but does not purport to limit the number of "injuries" that may result from the negligent act or omission. The

"new injury" exception is an attempt to reconcile the statute's requirement that the period of limitations commence on the date of the patient's "injury," on the one hand, with a recognition, on the other, that not all "injuries" are necessarily the immediate consequence of a physician's negligent misdiagnosis.

As the Court of Appeals noted, the "new injury" exception "has been part of our settled jurisprudence for almost 20 years and has been applied or referred to in myriad cases. [Cit.]" *Amu v. Barnes*, supra at 730 (1). It is not applicable when the "evidence demonstrates only that [the patient's] existing condition was misdiagnosed and mistreated, and that condition was the *same one* that existed at the time [he or she] first sought treatment from [the doctor]." (Emphasis supplied.) *Kane v. Shoup*, 260 Ga. App. 723, 725 (1) (580 SE2d 555) (2003). "If [the patient's subsequent] symptoms were symptoms of the same injury that existed at the time of the alleged misdiagnosis, then the claim is barred by the two-year limitation[s] period." *Kitchens v. Brusman*, 280 Ga. App. 163, 165 (2) (633 SE2d 585) (2006). See *Kaminer v. Canas*, supra at 837 (2) ("new injury" exception does not apply where, after patient's AIDS condition was misdiagnosed, he did not develop any new condition and experienced only symptoms otherwise attributable to the worsening of that condition). The "new injury" exception applies only "in the most extreme circumstances." *Burt v. James*, 276 Ga. App. 370, 374 (623 SE2d 223) (2005). "In order for this exception to apply, not only must there be evidence that the [patient] developed a new injury, but [he or she] also must 'remain( ) asymptomatic for a period of time following the misdiagnosis.' [Cit.]" *Amu v. Barnes*, supra at 729 (1).

A patient suffers a "new injury" if he or she has a relatively benign and treatable precursor medical condition which, as a proximate result of being misdiagnosed, is left untreated and subsequently develops into a much more serious and debilitating condition. See *Whitaker v. Zirkle*, 188 Ga. App. 706, 707 (1) (374 SE2d 106) (1988) (mole, which was removed, but negligently misdiagnosed as non-malignant, developed into metastatic cancer). Compare *Kaminer v. Canas*, supra (patient never developed new medical condition, but only experienced worsening symptoms of his originally misdiagnosed AIDS condition). The evidence here shows that Mr. Barnes did experience such a "new injury" when, as a consequence of the misdiagnosis, he did not seek treatment for the pre-malignant polyp or very early malignancy from which he suffered in January of 2000 and subsequently developed metastatic colon cancer which spread to his lymph nodes and liver. His metastatic cancer is a "new injury" which did not exist at the time of the original misdiagnosis, but which is a proximate result of Dr. Amu's negligence. See *Whitaker v. Zirkle*, supra. Compare *Kaminer v. Canas*, supra (patient had same

AIDS condition before and after misdiagnosis, and only the symptoms of that condition worsened).

The evidence also shows that, after being misdiagnosed, Mr. Barnes was asymptomatic as to the medical complaints which led him to visit Dr. Amu. He remained symptomless until June of 2004, when he had a recurrence of the rectal bleeding that had caused him to consult Dr. Amu more than four years earlier. One reason that a period without symptoms is a necessary component of the "new injury" exception is so that any pain, suffering and economic loss that is attributable thereto can be separated and distinguished from the pain, suffering and economic loss resulting from the misdiagnosis of the original condition. The other basis for the requirement that the patient be asymptomatic after the original misdiagnosis relates to the establishment of the date that the statute of limitations commences on the "new injury." "When a misdiagnosis results in a subsequent injury that is difficult or impossible to date precisely, the statute of limitation[s] runs from the date symptoms attributable to the new injury are manifest to the plaintiff. [Cits.]" *Walker v. Melton*, 227 Ga. App. 149, 151 (1) (b) (489 SE2d 63) (1997). Unless there is a period when the patient is symptomless as to his or her original medical complaint, it is not possible to determine when the misdiagnosis has resulted in a "new injury" as manifested by an occurrence of symptoms that should prompt medical attention.

Appellants urge that the "new injury" exception is an instance of an unauthorized "discovery rule."

> "(P)rescribing periods of limitation is a legislative, not a judicial, function . . . ." [Cit.] Because OCGA § 9-3-71 (a) provides that the period of limitation begins to run at the time of injury, "initiating the period of limitation in a medical malpractice action (at some other point, such as) when the alleged negligence is first discovered would be contrary to the plain language of" the statute. [Cit.]

*Kaminer v. Canas*, supra at 832 (1). However, the "new injury" exception is not predicated on the patient's discovery of the physician's negligence. Consistent with OCGA § 9-3-71 (a), the trigger for commencement of the statute of limitations is the date that the patient received the "new injury," which is determined to be an occurrence of symptoms following an asymptomatic period. Here, Mr. Barnes experienced the symptoms of his "new injury" in June of 2004. The two-year statute of limitations began to run at that time, even though he did not discover until some time later that his metastatic colon cancer was attributable to Dr. Amu's misdiagnosis. As the Court of Appeals correctly held,

the focus on manifested symptoms is intended to serve as a straight-forward analytic tool for identifying the date when the new injury actually arose, given the difficulty, if not impossibility, in many cases of accurately pinpointing that date, given that the new injury arises "at some time between the misdiagnosis and the correct diagnosis, when the patient (is) not experiencing symptoms." [Cits.]

*Amu v. Barnes*, supra at 730 (1). Thus, the "new injury" exception is entirely consistent with the statutory requirement that the statute of limitations commence on the date of "injury," " 'even if the patient is not aware of either the cause of the pain or of the connection between the symptoms and the negligent act or omission.' [Cit.]" *Amu v. Barnes*, supra. Since *Whitaker* was first decided nearly two decades ago, the General Assembly has acquiesced in a long series of cases that interprets "injury" as it appears in OCGA § 9-3-71 (a) to include a "new injury." Accordingly, a "reinterpretation" of that statute, achievable only through a wholesale repudiation of those cases,

would constitute an unauthorized change in an "integral" part of the statute. [Cit.] If OCGA § [9-3-71 (a)] is to be revised so as to exclude "[new injuries]," "the General Assembly, rather than the courts, must take that action." [Cit.]

*RadioShack Corp. v. Cascade Crossing II*, 282 Ga. 841, 843 (653 SE2d 680) (2007).

"Dr. Amu concedes that under the subsequent injury exception, [Mr.] Barnes' action was timely because it was filed within six months of the first manifestation of symptoms of [Mr.] Barnes' metastatic colon cancer." *Amu v. Barnes*, supra at 729 (1). Because that exception does not create an unauthorized "discovery rule," the Court of Appeals correctly affirmed the trial court's ruling that the statute of limitations had not run on Mr. Barnes' claim for his "new injury." Compare *Kaminer v. Canas*, supra.

*Judgment affirmed. All the Justices concur.*


SEARS, Chief Justice, concurring.

I write separately merely to state that there is no meaningful distinction between this case and our recent decision in *Kaminer v. Canas*[1] other than the fact that this case involves a man with cancer while *Kaminer* involved a child with AIDS. In fact, *Kaminer* is the stronger case for application of the new injury rule. AIDS is a medical

---

[1] *Kaminer v. Canas,* 282 Ga. 830 (653 SE2d 691) (2007).

condition caused by HIV infection in which the autoimmune system is impaired.[2] The sufferer has an increased susceptibility to a host of separate diseases caused by viruses, bacteria, and fungi that the body can no longer effectively ward off. Patients whose HIV infection has progressed to the point that they are considered to have AIDS develop illnesses as varied as non-Hodgkin's lymphoma, pneumocystis pneumonia, brain lesions, cervical cancer, Epstein-Barr Virus, and chronic diarrhea. Each of these diseases would appear to fall well within the majority's description of a " 'new injury' . . . that [is] not . . . necessarily the immediate consequence of a physician's negligent misdiagnosis." Consequently, because I dissented in *Kaminer*, and because I believe that the majority has reached the correct result in this case, I concur.

MELTON, Justice, concurring.

Although I concur in this case, I write separately to emphasize that, for the "new injury" exception to apply, a patient must have experienced an asymptomatic period between the initial misdiagnosis and the onset of new symptoms. See, e.g., *Burt v. James*, 276 Ga. App. 370 (623 SE2d 223) (2005). I believe that this requirement drives the outcome in both *Kaminer v. Canas*, 282 Ga. 830 (653 SE2d 691) (2007), and this case. In *Kaminer*, the patient did not have an asymptomatic period. Instead, he continued to experience a number of ailments and symptoms indicative of his HIV infection following his misdiagnosis. In this case, on the other hand, the patient experienced an asymptomatic period of over a year. Therefore, because an asymptomatic period is a requirement for the application of the "new injury" rule, that rule could not be applied in *Kaminer*, but it can be applied in this case. I agree with Chief Justice Sears' belief that it would not be proper to distinguish this case from *Kaminer* solely on the basis that one case involves cancer and the other involves HIV infection. I believe nonetheless that the requirement that there be an asymptomatic period creates a legal distinction between these cases which results in the different outcomes.

DECIDED JUNE 2, 2008.

*Bobby C. Aniekwu, Christopher J. McFadden*, for appellants.
*James M. Poe*, for appellees.

---

[2] See *Bragdon v. Abbott*, 524 U. S. 624, 633-637 (118 SC 2196, 141 LE2d 540) (1998).

*Donald J. Palmisano, Jr., Peters & Monyak, Robert P. Monyak, Jeffrey S. Bazinet, Pope & Howard, J. Marcus Howard, Henry, Spiegel, Fried & Milling, Harvey R. Spiegel*, amici curiae.