**THIRD DIVISION**
**MILLER, P. J.,**
**ELLINGTON, P. J., and GOBEIL, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2018**

# In the Court of Appeals of Georgia

A18A0863. HAYES et al. v. HINES et al.

ELLINGTON, Presiding Judge.

In this medical malpractice action, the Appellees, Jeffrey Hines, M. D. ("Dr. Hines") and Wellstar Cobb Gynecologists, LLC, Wellstar Medical Group, LLC, and Wellstar Health System, Inc. ("Wellstar defendants"), moved to dismiss those claims raised by the Appellant, Michael Hayes, in his capacity as the administrator of the estate of Erika Hayes, his deceased wife.[1] The trial court, upon conversion of the motion to dismiss to a motion for partial summary judgment, granted partial summary judgment to Appellees on the ground that the estate's claims were barred by the statute of limitation. Appellant contends on appeal that the trial court erred in

---

[1] Appellant's complaint, as amended, also raised claims against Appellees in his capacity as Erika Hayes's surviving spouse.

granting Appellees' motion for partial summary judgment because (1) the trial court erred in holding that Appellant could not show a "new injury" exception to the two-year statute of limitation established by OCGA § 9-3-71 (a), (2) the trial court erred in finding that the tolling provisions of OCGA § 9-3-92 did not apply to this case, and (3) the trial court erred in concluding that the claims against Dr. Hines, which Appellant raised in his second amended complaint, did not relate back to the filing of the original complaint by operation of OCGA § 9-11-15 (c).[2] We reverse for the reasons set forth below.

"The standard of review for an appeal from a grant of summary judgment is de novo, viewing the evidence in the light most favorable to the nonmoving party, to determine whether a genuine issue of material fact remains or whether the moving party is entitled to judgment as a matter of law." (Citation omitted.) *Oller v. Rockdale Hospital, LLC*, 342 Ga. App. 591, 592 (804 SE2d 166) (2017).

So viewed, the record shows the following. In August 2013, Erika Hayes ("Hayes") sought treatment from Dr. Vidya Soundararajan, an OB/GYN, for abnormal bleeding and a large fibroid mass in her uterus. They discussed treatment options, including an abdominal hysterectomy and a robotic hysterectomy. Dr.

---

[2] Appellees' cross-appeal in Case No. A18A0864 has been withdrawn.

Soundararajan referred Hayes to gynecological oncologist Dr. Jeffrey Hines to evaluate whether the robotic procedure was appropriate for Hayes.

After Dr. Hines reviewed ultrasound and MRI reports and then personally met with Hayes on November 13, 2013, he reported to Dr. Soundararajan that he had a very low suspicion that the fibroids were malignant. According to Dr. Soundararajan, if Dr. Hines had been concerned that the fibroids had been cancerous, he would have performed the surgery because "he's the cancer surgeon." Dr. Soundararajan was satisfied that Dr. Hines "sending the patient back to [her] . . . was his way of saying do the hysterectomy as you choose fit."

On December 13, 2013, Dr. Soundararajan performed a robotic hysterectomy on Hayes during which Hayes's uterus and fibroids were cut up, or "morcellated," rather than removed intact. An analysis of samples obtained during the surgery identified grade three leiomyosarcoma, a form of soft tissue cancer. Following the surgery, and for several months thereafter, CT and PET scans were negative for cancer. On October 24, 2014, however, a screening showed the presence of pelvic tumors, and a biopsy confirmed a recurrence of high grade leiomyosarcoma. According to the affidavit of Dr. Edmund S. Petrilli, a physician board certified in gynecology and gynecologic oncology, the morcellating of Hayes's uterus caused the

3

spillage and spread of her malignancy throughout her abdominal-pelvic cavity, whereas the cancer had previously been localized within her uterus. Hayes died of metastatic uterine cancer on May 19, 2015.

Appellant was appointed by the probate court as administrator of Hayes's estate on December 9, 2015, and he filed the underlying lawsuit against Dr. Soundararajan and numerous other defendants that same day.[3] Appellant asserted a wrongful death claim in his capacity as Hayes's surviving spouse, and he asserted the estate's claims for pre-death damages in his representative capacity. The original complaint named "John Does Nos. 1-5" as defendants but did not name Dr. Hines as a defendant. Appellant filed an amended complaint in March 2016, which continued to assert claims against the John Does.

Appellant filed a second amended complaint on April 21, 2017, which named Dr. Hines as a defendant and which substituted Dr. Hines for a John Doe. The second amended complaint also alleged that Dr. Hines was an employee and agent of the Wellstar defendants. Attached to the amended complaint was the affidavit of William

---

[3] The complaint was filed in the State Court of Gwinnett County based on the residency of defendants associated with the manufacture of the morcellation device used in Hayes's surgery, and the case was later transferred to the State Court of Cobb County after Appellant settled his claims against those defendants.

4

Irvin, M. D., a gynecologic oncologist, who opined that Dr. Hines violated the standard of care by, among other things, improperly classifying Hayes as a "very low suspicion for leiomyoma sarcoma." Dr. Irvin was also of the opinion that, to a reasonable degree of medical certainty, Dr. Hines's "failures caused or contributed to the spread of Mrs. Hayes' occult malignancy and ultimate metastasis of her uterine cancer, thereafter leading to a substantially reduced likelihood of survival."

Following the filing of the second amended complaint, Appellees answered, asserted the affirmative defense that the estate's claims were barred by the two-year statute of limitation, and moved to dismiss the estate's claims on that ground.[4] Appellant responded that the estate's claims were timely because (i) Hayes was asympotomatic of metastatic cancer until October 24, 2014, and a "new injury" occurred at that time for purposes of the commencement of the statute of limitations, and (ii) by operation of OCGA § 9-3-32, the running of the statute was tolled between Hayes's death and Appellant's appointment as administrator of her estate, which placed the expiration of the statute of limitation in May 2017. Appellant also

---

[4] The Appellees did not move to dismiss Appellant's wrongful death claim, for which the limitation period began to run at the time of Hayes's death. See *Williams v. Dept. of Human Resources*, 272 Ga. 624, 626 (532 SE2d 401) (2000); *Legum v. Crouch*, 208 Ga. App. 185, 187 (2) (430 SE2d 360) (1993).

5

contended that, should the trial court disagree that the cause of action arose on October 24, 2014, the estate's claims were nevertheless timely because they related back to the date of filing of the original complaint upon application of OCGA § 9-11-15 (c).

Appellees' motion to dismiss was later converted to a motion for partial summary judgment with the consent of the Appellant. Following a hearing, the trial court found that (i) the "new injury" exception did not apply, (ii) the limitation period was not tolled under OCGA § 9-3-32, and (iii) the second amended complaint did not relate back to the date of the original complaint for purposes of OCGA § 9-11-15 (c). The trial court therefore granted Appellees' motion for partial summary judgment.

1. Appellant contends that the trial court erred in finding that, as a matter of law, he could not demonstrate a "new injury" that would provide an exception to the two-year statute of limitation. OCGA § 9-3-71 (a) requires that "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." In cases where the allegedly tortious conduct was a failure to correctly diagnose a patient's medical condition, the "injury" referenced by OCGA § 9-3-71 (a) generally occurs at the time of misdiagnosis. See *Amu v. Barnes*, 283 Ga. 549, 551 (662 SE2d 113) (2008). In

6

such cases, "[t]he misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis [and] the two-year statute of limitations begins to run simultaneously on the date that the doctor negligently failed to diagnose the condition[.]" (Citation and punctuation omitted.) Id. A "new injury" exception to general rule applies, however,

> in cases in which the patient's injury arising from the misdiagnosis occurs subsequently, generally when a relatively benign or treatable precursor condition, which is left untreated because of the misdiagnosis, leads to the development of a more debilitating or less treatable condition. Thus, the deleterious result of a doctor's failure to arrive at the correct diagnosis in these cases is not pain or economic loss that the patient suffers beginning immediately and continuing until the original medical problem is properly diagnosed and treated. Rather, the injury is the subsequent development of the other condition.

(Citation and punctuation omitted.) *Cleaveland v. Gannon*, 284 Ga. 376, 377 (1) (667 SE2d 366) (2008). "[T]he trigger for commencement of the statute of limitations is the date that the patient received the 'new injury,' which is determined to be an occurrence of symptoms following an asymptomatic period." *Amu v. Barnes*, 283 Ga. 549, 513 (662 SE2d 113) (2008). See *Ward v. Bergen*, 277 Ga. App. 256, 259 (626 SE2d 224) (2006) ("[W]hen a misdiagnosis results in subsequent injury that is

difficult or impossible to date precisely, the statute of limitation runs from the date symptoms attributable to the new injury are manifest to the plaintiff.") (citation and punctuation omitted). As the defense of the statute of limitation is an affirmative defense for purposes of OCGA § 9-11-8 (c), "at the summary judgment stage, the burden was on [Appellees] to come forward with evidence demonstrating as a matter of law that [Hayes's] injury occurred and manifested itself more than two years before [Appellant's] malpractice suit was commenced." (Citations and punctuation omitted.) *Ward v. Bergen*, 277 Ga. App. at 260.

Appellees argue that the new injury exception should not apply because Hayes's cancer was not a benign or treatable condition in November 2013, and that she did not remain asymptomatic before the development of the alleged new injury. Hayes's condition was not benign as of November 13, 2013, but Appellees do not show that it was not then treatable, or that it was as or less treatable than the metastatic cancer that she later developed.[5] Rather, the evidence showed that the

_____

[5] In their appellate brief, Appellees emphasize "medical statistics" showing approximately two-thirds of women diagnosed within grade three leiomyosarcoma die within five years of diagnosis. In support of the assertion, they cite to their lower court brief, which in turn relies on an out-of-court statement, i.e., a website. Pretermitting whether Appellees' statistical assertion constitutes evidence, it does not show that Hayes's condition was untreatable.

8

ultimate metastasis of Hayes's uterine cancer led to a substantially reduced likelihood of her survival. Further, according to Dr. Irvin, "an open laparotomy with removal of an intact uterus" was an alternative to the procedure involving morcellation, which carried with it an "attendant risk of . . . death" from the spread of the malignancy.

On the advice of physicians at the Mayo Clinic, Hayes also underwent chemotherapy after the pathology confirmed that her uterine fibroids were malignant and during the period before the new tumors appeared. Appellees posit, albeit without testimony of the physicians who authorized the chemotherapy,[6] that licensed medical professionals would not have permitted such "unnecessary care" if Hayes were "cancer free." However, the evidence does not demand such a conclusion.[7] Appellant, on the other hand, has pointed to evidence that Hayes's metastatic cancer did not manifest until October 24, 2014, and that Dr. Hines's misdiagnosis in November 2013 contributed to the improper treatment of Hayes's condition and thereby to "the

---

[6] As far as professional testimony, the appellate record includes only the affidavits attached to Appellant's complaint, and the amendments thereto, and the deposition of Dr. Soundararajan.

[7] At his deposition Appellant agreed that one of the physicians at the Mayo Clinic looked at the PET scan and didn't see any active cancer. Appellant then testified that Hayes was admitted into a study that involved chemotherapy "because a known leiomyosarcoma tumor was morcellated inside [her] body."

9

development of a more debilitating or less treatable condition." (Citation and punctuation omitted.) *Cleaveland v. Gannon*, 284 Ga. at 377 (1). Accordingly, the trial court erred in finding that, as a matter of law, the new injury exception did not apply. See id. at 382 (2) (where evidence authorized a finding that, following defendants' negligence in failing to diagnosis cancer that later metastasized, the patient experienced a period when he was asymptomatic of metastatic cancer, the "new injury" exception precluded the grant of summary judgment to the defendants based on the expiration of the statute of limitation); *Amu v. Barnes*, 283 Ga. at 553-554 (metastatic cancer constituted a "new injury" which did not exist at the time of the original diagnosis, but which was proximately caused by defendant's negligence, and so the limitation period began to run when the patient experienced the new injury); *Ward v. Bergen*, 277 Ga. App. at 261 (as a jury issue remained as to when invasive cancer developed and metastasized after defendant's alleged failure to properly diagnose and treat the patient's condition, and whether she experienced any symptoms of the invasive cancer more than 2 years before filing suit, malpractice claims were not barred by the statute of limitation as a matter of law, and trial court erred in granting summary judgment to the defendant).

10

2. The Appellant also contends that the trial court incorrectly concluded that the tolling provisions of OCGA § 9-3-92 did not apply to this case. OCGA § 9-3-92 provides, in applicable part:

> The time between the death of a person and the commencement of representation upon his estate . . . shall not be counted against his estate in calculating any limitation applicable to the bringing of an action, provided that such time shall not exceed five years.

Thus, "[l]imitation statutes run against estates, but when estates are unrepresented, such statutes are tolled between the death of a person and the appointment of a representative . . . for a period of five years provided representation is taken within that period of time." *Harrison v. Holsenbeck*, 208 Ga. 410, 411 (67 SE2d 311) (1951).

Appellees argue that, as Appellant obtained counsel and sought expert advice before having "himself appointed" administrator, he began acting as the estate's administrator before his formal appointment and thereby implicitly waived the statute's tolling provisions. Pretermitting whether Appellant's pre-appointment acts were consistent with that of an administrator,[8] we find no support for this argument.

---

[8] Appellant had his own interests to protect in pursuing a claim for Hayes's wrongful death.

First, the tolling provision in OCGA § 9-3-92, in light of the use of the word "shall," contemplates that "the tolling calculation therein provided [is] mandatory in every instance where the statute [is] applicable; that is, tolling occurs by operation of law to the extent provided by the statute." *Legum v. Crouch*, 208 Ga. App. 185, 188 (3) (430 SE2d 360) (1993). See *Goodman v. Satilla Health Svcs.*, 290 Ga. App. 6, 9 (658 SE2d 792) (2008) (applying tolling provision of OCGA § 9-3-92 to dispute as to whether the statute of limitation had run on an estate's medical malpractice claim). Second, "only the qualification of a permanent administrator constitutes representation upon the estate so as to trigger the revival of a tolled statute of limitations." (Citations omitted.) *Deller v. Smith*, 250 Ga. 157, 159 (1) (b) (296 SE2d 49) (1982). See *Kitchens v. Brusman*, 280 Ga. App. 163, 165 (2) (633 SE2d 585) (2006) (the appointment of a temporary administrator does not result in the representation of the estate for purposes of the tolling provision of OCGA § 9-3-32). Even if Appellant hired a lawyer and consulted with experts beforehand, he was not, if fact, appointed administrator until December 9, 2015, at which time the statute of limitation on the estate's malpractice claim, which had been tolled upon Hayes's death, began to run anew. See *Goodman v. Satilla Health Svcs.*, 290 Ga. App. at 9 (In a medical malpractice case, the statute of limitation began to run on the estate's claim

12

on the date of the decedent's diagnosis, which was the date of injury, and it continued to run until the decedent's death, at which time the running of the period was tolled until the appointment of the estate's representative.). It follows that the trial court erred in finding that OCGA § 9-3-92 "does not apply" to this case.

3. Finally, Appellant contends that the trial court erred in ruling that the second amended complaint did not relate back to the original complaint for purposes of OCGA § 9-11-15 (c).[9] As explained in Division 1, supra, a question of material fact remains whether, under the "new injury" exception to OCGA § 9-3-71 (a), the statutory period of limitation began to run on October 24, 2014. Given that the

---

[9] OCGA § 9-11-15 (c) provides:

Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

limitation period was tolled from the date of Hayes's death to the appointment of an administrator of her estate, as explained in Division 2, supra, if the finder of fact determines that Hayes suffered a new injury on October 24, 2014, then Dr. Hines was served within the time allowed.[10] Accordingly, as the case currently stands, it is premature to consider whether the second amended complaint would relate back to the initial complaint if Dr. Hines had been served outside the limitation period.

*Judgment reversed. Miller, P. J., concurs and Gobeil, J., concurs specially.*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a)**

---

[10] Generally, "[w]hen an unidentified party is sued as 'John Doe' and service as to the unknown party is successful within the statute of limitations, an amendment to the complaint relates back to the filing of the original complaint." *Bailey v. Kemper Group*, 182 Ga. App. 604, 606 (356 SE2d 695) (1987). See *Sims v. American Cas. Co.*, 131 Ga. App. 461, 481 (6) (206 SE2d 121) (1974) (accord). However, "[w]here service has not been effected successfully on the John Doe party within the statutory time of limitations, the test of OCGA § 9-11-15 (c) applies." *Bailey v. Kemper Group*, 182 Ga. App. at 606. See generally *Bishop v. Farhat*, 227 Ga. App. 201, 202 (1) (489 SE2d 323) (1997) (OCGA § 9-11-15 (c) is the procedure "by which the trial court determines whether the amended complaint 'relates back' to a filing within the statute of limitation.").

A18A0863.  HAYES, et al. v. HINES, et al.

GOBEIL, Judge, concurring specially.

The Appellant concedes that biopsy samples from Erika Hayes' laparoscopic hysterectomy were pathologically confirmed as "grade III leiomyosarcoma, i.e., a particularly aggressive form of soft tissue cancer with a high mortality rate."  This grim diagnosis calls into question whether the ultimate metastasis of the cancer was a new injury or just the inevitable progression of a deadly disease. Appellant asserts that there was a period during which Ms. Hayes was "cancer-free" following the hysterectomy (based upon negative CT and PET scans, but not necessarily exploring what the scans are capable of detecting). On the other hand, Appellees contend that

Ms. Hayes was symptomatic and actively participating in chemotherapy throughout the time between her cancer diagnosis and death. Given the facts of this case, the caselaw on whether the metastasis of cancer can be a new injury and the standard for summary judgment, I cannot conclude as a matter of law that there is no genuine issue of material fact regarding whether there may have been a new injury. See OCGA § 9-11-56(c) (summary judgment is only proper when there is no genuine issue of material fact). Accordingly, I concur that it was error to decide the question on summary judgment.