**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 22, 2024**

# In the Court of Appeals of Georgia

A24A1135. MOHAR v. LEGUIZAMO et al.

DOYLE, Presiding Judge.

John Mohar brought this medical malpractice action against Dr. Jorge P. Leguizamo[1] and his employer, Georgia Cancer Specialists I, P.C., (collectively, "the Defendants") alleging that the Defendants were negligent in failing to discontinue Mohar's steroid prescription, resulting in symptoms related to long-term steroid use. The Defendants moved for summary judgment, contending that Mohar failed to timely file the lawsuit within the two-year statute of limitation. The trial court granted

---

[1] Dr. Leguizamo's last name was misspelled "Leguizimo," and Georgia Cancer Specialists I, P.C. was incorrectly identified as Georgia Cancer Specialists I, LLC in the style of the case below.

the motion, and Mohar appeals, arguing that the trial court incorrectly calculated when the statute of limitation began to run. For the reasons that follow, we affirm.

OCGA § 9-11-56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" "A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2]

So viewed, the record shows that Mohar had a cancerous brain tumor removed in 2009. In November 2016, he underwent another brain surgery due to progression of the cancer and was prescribed steroids to prevent post-surgical swelling.[3] Mohar weaned off steroids in December 2016 as directed, but he then started experiencing

---

[2] (Citations and punctuation omitted.) *Tarver v. Sigouin*, 360 Ga. App. 627 (860 SE2d 179) (2021).

[3] Mohar's initial steroid prescription included a taper schedule whereby he was to discontinue steroids within two months.

headaches, so he was re-prescribed steroids by a separate provider. Mohar continued taking steroids into 2017 to manage his headaches.

Mohar first presented to Dr. Leguizamo in March 2017 for oncological care, which included steroid management. In April 2017, a separate provider recommended that Mohar taper off steroids subject to his oncologist's assessment. On August 1, 2017, Mohar reported to Dr. Leguizamo that he was no longer experiencing headaches and wanted to cut down on his steroid use. Dr. Leguizamo advised Mohar to try taking steroids every other day instead of daily. Mohar was worried about skipping days, so instead he halved his daily steroid dosage. Within days, Mohar began experiencing swelling and pressure in his head, so he resumed his normal steroid dosage, resolving these symptoms.

On February 15, 2018, when Mohar complained of abdominal stretch marks and weight gain attributed to steroids,[4] Dr. Leguizamo decreased his steroid prescription. The stretch marks resolved with the lower dose, but the obesity diagnosis remained. On August 6, 2019, Mohar reported complaints of muscle aches and pains that he

---

[4] At this visit to Georgia Cancer Specialists, nurse practitioner Lily Yadav attributed Mohar's symptoms to steroid use. Dr. Leguizamo signed off on the assessment.

thought were due to steroids. He also presented with symptoms of gastroesophageal reflux disease ("GERD") and intermittent forearm bleeding, which were attributed to steroids.[5] On August 25, 2019, Mohar was admitted to the emergency room, complaining of (among other things) bilateral ankle swelling and blurred vision, both of which are complications of long-term steroid use. In September 2019, Mohar was diagnosed with hypertension, another complication of long-term steroid use. By December 2019, Mohar's neurologist had tapered him off steroids completely.

In December 2019, after weaning off steroids, Mohar presented to his primary care provider with elevated blood pressure and dizziness. In January 2020, Mohar had a telemedicine appointment with a separate provider, who informed him that these and other symptoms, including meningitis, cardiac issues, and muscle wasting, were due to his being on steroids for too long. On February 11, 2020, Dr. Leguizamo put Mohar back on steroids.[6] In March 2020, imaging of Mohar's lumbar spine showed severe multilevel stenosis due to epidural lipomatosis, a complication of long-term

---

[5] At this visit to Georgia Cancer Specialists, nurse practitioner Tajuana Bradley attributed Mohar's symptoms to steroid use. Dr. Leguizamo again signed off on the assessment.

[6] Treatment notes from this visit reflect that Dr. Leguizamo recommended "chronic" steroid use in Mohar's case to manage his underlying brain condition.

steroid use. After reviewing the imaging, Mohar's neurologist advised him to lose weight and get off steroids.

In April 2020, Mohar had again weaned off steroids, but when his headaches reoccurred, another provider again prescribed steriods. In June 2020, Dr. Leguizamo noted that Mohar's headaches had resolved and continued to prescribe him steroids. On June 10, 2020, Mohar's endocrinologist advised him that his long-term steroid use had resulted in weight gain and prediabetes and that he needed to taper off steroids subject to his oncologist's guidance. On September 3, 2020, imaging of Mohar's abdomen showed hepatic steatosis, which is a complication of long-term steroid use. Mohar deposed that his primary care provider advised him on September 3, 2020, that he had been on steroids for too long. On September 11, 2020, imaging of Mohar's lumbar spine showed extensive epidural lipomatosis compressing the nerve roots. On September 16, 2020, Mohar's neurologist reviewed the imaging, recommended spinal surgery, and reiterated that he needed to get off steroids.

Dr. Leguizamo last treated Mohar on September 24, 2020. At that visit, Dr. Leguizamo noted that from an oncological perspective, Mohar's underlying brain condition was stable and had been since June 2017. Nevertheless, Dr. Leguizamo

continued Mohar's steroid prescription.[7] On October 14, 2020, Mohar filled a steroid prescription previously written by Dr. Leguizamo.[8]

On October 15, 2020, neuro-oncologist Alfredo Voloschin initiated a steroid taper that eventually was successful and advised Mohar that Dr. Leguizamo had kept him on steroids for too long. Mohar deposed that he took his last dose of steroids in November 2020.

Between November 2020, and August 2021, Mohar experienced or was diagnosed with a pulmonary embolism; avascular necrosis of his shoulders, ankles, and hips; osteoporosis, osteopenia, and osteoarthritis; hyperlipidemia and elevated liver enzymes; Cushing's syndrome; deep vein thrombosis; and fatigue — all symptoms and complications of long-term steroid use.

The trial court found that, at the latest, the statute of limitation applicable to Mohar's action began to run on September 21, 2020, when Mohar was diagnosed with epidural lipomatosis. The trial court ruled that, because Mohar did not file his

---

[7] Mohar deposed that Dr. Leguizamo told him that he would be on steroids for the rest of his life.

[8] Mohar deposed that he ignored some of his symptoms because Dr. Leguizamo told him that he needed steroids to keep his brain tumor from growing.

complaint until September 26, 2022, the action was not filed within two years of his injury as required by OCGA § 9-3-71 (a). Thus, the trial court granted the Defendants' motion for summary judgment, ruling that Mohar's claim was time-barred. Mohar now appeals.

1. Mohar argues that under the continuous treatment doctrine and the weekend rule, he had until September 26, 2022, to file this action, and the trial court erred by granting the motion for summary judgment on the basis that his claims were time-barred.

Under OCGA § 9-3-71 (a), a medical malpractice action must be brought "within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred." Normally, in cases of negligent misdiagnosis,

> the injury begins immediately upon the misdiagnosis due to pain, suffering, or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis; thus, the fact that the patient did not

know the medical cause of his suffering does not affect the applicability of OCGA § 9-3-71 (a).[9]

Thus, "the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result."[10]

(a) Here, the date on which Mohar's symptoms of chronic steroid use first became apparent was February 8, 2018, when Mohar presented to Georgia Cancer Specialists with complaints of abdominal stretch marks and weight gain, which Yadav attributed to steroids. Mohar's medical expert concurred that these symptoms were attributable to chronic steroid use. Accordingly, Mohar's cause of action for negligent misdiagnosis arose February 8, 2018, when he first manifested symptoms of chronic steroid use, and the Defendants allegedly failed to correctly diagnose and treat this condition by discontinuing Mohar's steroid prescription.[11]

---

[9] (Citation and punctuation omitted.) *Stafford-Fox v. Jenkins*, 282 Ga. App. 667, 669 (1) (639 SE2d 610) (2006).

[10] (Citation and punctuation omitted.) *Smith v. Harris*, 294 Ga. App. 333, 338 (2) (670 SE2d 136) (2008).

[11] See id. at 338 (2) (a) (holding that the plaintiff's cause of action for negligent misdiagnosis arose when she first manifested symptoms of antibiotics poisoning, and the defendant failed to provide the appropriate diagnosis and treatment).

That Mohar failed to realize the cause of these symptoms on February 8, 2018, does not alter this result, nor does the fact that these symptoms subsequently worsened and resulted in more serious conditions because those conditions were also directly related to Mohar's chronic steroid use.[12] The two-year statute of limitation began to run on Mohar's medical malpractice action from the date of the first symptoms of his injury on February 8, 2018, and therefore, the statute ran prior to the date on which he filed his complaint, September 26, 2022. Thus, the trial court properly granted the Defendants' motion for summary judgment as to Mohar's claim of negligent misdiagnosis.

(b) Mohar seeks to avoid this conclusion by invoking the continuous treatment doctrine, under which the statute of limitation for medical malpractice actions alleging negligent misdiagnosis "does not commence running until treatment by the doctor for the particular disease or condition involved has terminated — unless during treatment the patient learns or should learn of negligence, in which case the statute runs from

---

[12] See *Stafford-Fox*, 282 Ga. App. at 669 (1) ("The fact that [the plaintiff] did not know the medical cause of [the] symptoms does not affect the applicability of OCGA § 9-3-71 (a). In addition, the fact that these symptoms worsened and resulted in permanent disability does not lead to a different result [because] the subsequent disability was directly related to the initial symptoms and misdiagnosis.") (citation omitted).

the time of discovery, actual or constructive."[13] Mohar argues that pursuant to this doctrine, the statute of limitation for his claim of negligent misdiagnosis did not commence running until September 24, 2020.[14] But the decision Mohar cites in support of this proposition, *Williams v. Young*,[15] was overruled by the Supreme Court of Georgia in *Young v. Williams*,[16] which explicitly rejected the continuous treatment doctrine. And the Supreme Court has declined subsequent invitations to resurrect this

---

[13] (Citation and punctuation omitted.) *Williams v. Young*, 247 Ga. App. 337, 340 (543 SE2d 737) (2000), overruled by *Young v. Williams*, 274 Ga. 845 (560 SE2d 690) (2002).

[14] Mohar argues that September 24, 2020, is the date on which he discovered Dr. Leguizamo's alleged misdiagnosis. It is also the date on which Mohar's treatment with Dr. Leguizamo terminated.

[15] 247 Ga. App. at 340.

[16] 274 Ga. at 848 ("The legislatively-prescribed statute of limitation[] does not provide for the commencement of the period of limitation upon the termination of the health-care provider's treatment of the patient, and the judicial branch is not empowered to engraft such a provision on to what the legislature has enacted.").

doctrine.[17] Accordingly, Mohar's argument based on the continuous treatment doctrine fails.

Mohar also argues that the trial court erred by failing to give effect to the weekend rule in OCGA § 1-3-1 (d) (3)[18] when calculating the statute of limitation. But this argument relies on application of the continuous treatment doctrine, under which the statute of limitation for Mohar's negligent misdiagnosis claim would have run from September 24, 2020, to Saturday, September 24, 2022. Application of the weekend rule would give Mohar until Monday, September 26, 2022, to timely file his

---

[17] See, e.g., *Kaminer v. Canas*, 282 Ga. 830, 832 (1) (653 SE2d 691) (2007) ("Prescribing periods of limitation is a legislative, not a judicial, function. Because OCGA § 9-3-71 (a) provides that the period of limitation begins to run at the time of injury, initiating the period of limitation in a medical malpractice action at some other point . . . would be contrary to the plain language of the statute. That is why the continuing treatment doctrine cannot apply in Georgia. It is inconsistent with OCGA § 9-3-71 (a), since its focus is not on the date that the patient was injured by the allegedly negligent misdiagnosis.") (citations and punctuation omitted). See also *Goodman v. Satilla Health Servs.*, 290 Ga. App. 6, 7 (658 SE2d 792) (2008) ("[T]he continuous treatment theory has been resoundingly rejected in this [S]tate.") (citation and punctuation omitted).

[18] OCGA § 1-3-1 (d) (3) provides that "when a period of time measured in days, weeks, months, years, or other measurements of time except hours is prescribed for the exercise of any privilege or the discharge of any duty, the first day shall not be counted but the last day shall be counted; and if the last day falls on Saturday or Sunday, the party having such privilege or duty shall have through the following Monday to exercise the privilege or to discharge the duty."

complaint. As discussed above, the continuous treatment doctrine has been eliminated in Georgia. The statute of limitation for Mohar's claim began running on February 8, 2018, and expired on February 10, 2020.[19] Thus, Mohar's reliance on the weekend rule is unavailing, and the trial court did not err by ruling that Mohar's claim was barred by the statute of limitation.

2. In his reply brief, and for the first time on appeal, Mohar argues that Dr. Leguizamo was negligent in failing to warn Mohar about the dangers of long-term steroid use as late as September 24, 2020. Similarly, Mohar argues that, as late as September 24, 2020, Dr. Leguizamo fraudulently withheld critical information from Mohar in an attempt to cover up his failure to inform Mohar about the dangers of long-term steroid use. Mohar contends that these acts and omissions operated to trigger a new statute of limitation that commenced on September 24, 2020, and that, thus, the trial court erred by not considering these acts and omissions when calculating the statute of limitation applicable to Mohar's medical malpractice action. But because these issues were neither raised nor ruled on below, they are not preserved for

---

[19] February 8, 2020, fell on a Saturday, which gave Mohar until the following Monday, February 10, 2020, to timely file his complaint.

appellate review.[20] And even if Mohar had obtained rulings on these matters from the trial court, his principal brief fails to enumerate them as errors, and he raises these arguments only in his reply brief.[21] Thus, Mohar has abandoned these arguments, and we do not address them in this appeal.[22]

---

[20] See *Champion Windows of Chattanooga, LLC v. Edwards*, 326 Ga. App. 232, 242 (2) n.9 (756 SE2d 314) (2014) ("Issues and objections not raised in the trial court and ruled on by the trial court are deemed waived and cannot be raised for the first time on appeal.") (punctuation omitted).

[21] See *Stewart v. Johnson*, 358 Ga. App. 813, 814 (856 SE2d 401) (2021) ("[A]ny enumeration of error which is not supported in the principal brief by citation of authority or argument may be deemed abandoned[,] and we do not consider arguments that are raised for the first time in a reply brief.") (punctuation omitted).

[22] We recognize that there is a line of cases in Georgia holding that there is a "new injury" exception applicable to the normal running of the statute of limitation in negligent misdiagnosis cases in which the patient "has a relatively benign and treatable precursor medical condition which, as a proximate result of being misdiagnosed, is left untreated and subsequently develops into a much more serious and debilitating condition." (Citation omitted.) *Amu v. Barnes*, 283 Ga. 549, 552 (662 SE2d 113) (2008). In such cases, the statute of limitation "runs from the date symptoms attributable to the new injury are manifest to the plaintiff." (Punctuation omitted.) Id. at 553. Nevertheless, the new injury exception applies "only in the most extreme circumstances." (Punctuation omitted.) Id. at 552. And "[i]n order for this exception to apply, not only must there be evidence that the patient developed a new injury, but he or she also must remain asymptomatic for a period of time following the misdiagnosis." (Citation and punctuation omitted.) Id.

In the proceedings below, Mohar argued that the "new injury" exception applied to his claim, and the trial court rejected this argument. Mohar, however, does not challenge this ruling by the trial court on appeal, and thus, we do not address it.

Accordingly, we affirm the trial court's order granting the Defendants' motion for summary judgment.

*Judgment affirmed. Hodges and Watkins, JJ., concur.*

---

See *Morris v. Mullis*, 264 Ga. App. 428, 431 (590 SE2d 823) (2003) ("We do not consider issues not raised on appeal.")